**J. OCHOA & HERMANO v. PEREZ BLANCO.**

(Circuit Court of Appeals, First Circuit.
November 23, 1926.)

No. 2014.

**1. Bankruptcy ⟨⟩303(3)—Finding that credi-
tor, receiving preference, had knowledge of
bankrupt's insolvency, held supported by cir-
cumstances.**

Finding that creditor, to whom mortgage
was given within four months of petition in
bankruptcy, had knowledge of bankrupt's in-
solvency, so as to create preference, *held* sup-
ported by circumstances surrounding transac-
tion.

**2. Appeal and error ⟨⟩1008(1).**

Finding, which is not shown to be clearly
wrong, will not be disturbed on appeal.

**3. Costs ⟨⟩238(1).**

Where appellee files no brief, and is not
present at argument, decree, on being affirmed,
will be without costs.

Appeal from the District Court of the
United States for the District of Porto Rico;
Ira K. Wells, Judge.

Suit by Manuel Perez Blanco, trustee in
bankruptcy of Juan Gilibertys, against J.
Ochoa & Hermano. Decree for plaintiff, and
defendant appeals. Affirmed.

Ramon Siaca, of New York City (F. Soto
Gras, of San Juan, Porto Rico, and Delafield,
Thorne & Burleigh, of New York City, on the
brief), for appellant.

Luis Toro Cabanas, of San Juan, Porto
Rico, for appellee.

Before BINGHAM, JOHNSON, and
ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a bill
in equity, brought by the trustee in bankrupt-
cy of Juan Gilibertys (who, on November 21,
1923, filed a petition in bankruptcy and was
that day adjudicated a bankrupt), to set aside
a mortgage, given by the bankrupt on the
17th day of September, 1923, to the firm of
Ochoa & Hermano, to secure a credit with
that concern for $3,000, on the ground that,
at the time of the giving of the mortgage, Gil-
ibertys was insolvent; that Ochoa & Hermano
then knew, or had reason to believe, that he
was insolvent, and that the giving of the
mortgage would work a preference.

In the District Court of Porto Rico, after
hearing, it was found that the mortgage was
in fact given to secure an old indebtedness of
$1,945.15, for goods previously sold and de-
livered to him; that the balance of the credit
or sum secured by the mortgage was to cover
goods thereafter to be sold to him by the
firm; that the firm afterwards sold him goods

to the amount of $912.66; that the mortgage
was given within four months prior to the fil-
ing of the petition in bankruptcy; that Gili-
bertys on September 17, 1923, was insolvent,
and that Ochoa & Hermano then knew, or had
reasonable cause to believe, that he was in-
solvent, and that the mortgage, to the extent
it was given to secure the old debt, would ef-
fect a preference. From a decree embodying
the foregoing findings this appeal was taken.

The only error complained of is the find-
ing of the court that Ochoa & Hermano, at
the time the mortgage was given, knew, or
had reasonable cause to believe, that Gili-
bertys was insolvent.

[1] It appeared in evidence that Gilibertys
owed $24,610.63, of which $2,857.81 was se-
cured by the mortgage in question, the bal-
ance being unsecured; that he owned real es-
tate listed in his schedules at $3,500, which
the trustee sold for $4,000 (out of which the
value of the homestead is to be deducted);
and that he had stock in trade listed at $4,-
000, and machinery and fixtures at $500, out
of which the trustee realized $2,500, and book
accounts of $17,598.42, from which the trus-
tee collected about $30. Many of the book
accounts were old; 20 or more of the debtors
were dead, and the balance of the accounts
were uncollectable. There was nothing to
show that the stock in trade had been increas-
ed from September 17, when the mortgage
was given, to the filing of the petition in
bankruptcy, other than through the purchas-
es made of Ochoa & Hermano, amounting to
$912.66, and there was no evidence as to how
much the stock in trade had been reduced by
sales during this period. It is a fair infer-
ence, however, that it had not been materially
changed.

It further appeared that early in Septem-
ber, 1923, a salesman of Ochoa & Hermano,
whose place of business was in San Juan,
called on Gilibertys, who had a small retail
store in the town of Toa Baja, to collect the
sum of $1,945.15, then overdue; that he was
told by Gilibertys that he was out of funds
and could not pay it; that he was trying to
negotiate a loan, secured by a mortgage on
his house, to take care of some of his debts,
but had not succeeded; that thereafter, on the
17th of September, 1923, Gilibertys went to
see Ochoa & Hermano, and entered into ne-
gotiations with them for the credit of $3,000
above spoken of; that at that time Gilibertys
requested an increase in his credit, and an
extension of time for the payment of his old
indebtedness, on the ground that he was un-
able to collect the accounts due him and busi-
ness was slow; that Ochoa & Hermano de-

clined to increase his credit, or extend the time for payment of his indebtedness, unless he would guarantee the old account, as well as the additional credit; and that it was for this purpose that the mortgage was given. In the mortgage it was stipulated that Gilibertys should make use of the credit by buying goods from Ochoa & Hermano, should pay the amount of each invoice within 30 days, and 10 per cent. interest thereon if not paid at maturity. The credit was to last for a year, and then be fully liquidated. The mortgage said nothing about the old debt of $1,945.15, but on that date Gilibertys addressed and delivered to Ochoa & Hermano a letter, authorizing them to charge against the credit the old debt of $1,945.15. No explanation was given in the evidence for the failure to state in the mortgage that it was given to secure the old indebtedness of $1,945.15.

[2] It further appeared that during the month of September, 1923, other creditors of Gilibertys sought to collect their debts, but were unable to do so, and that some went so far as to attach his property. As a result, the petition in bankruptcy was filed. It does not appear that, at the time the mortgage was given, Ochoa & Hermano knew of the attachments, if any had then been made; but it does appear that they knew from Gilibertys that he was indebted to others, whom he had declined to pay for lack of funds, and it is a fair inference that they knew that other creditors, as well as themselves, were pressing their claims. The partner who conducted the negotiations leading up to the mortgage testified that he did not know, and did not inquire of Gilibertys, as to his indebtedness or his assets; but it does appear that the firm's salesman, who was in Gilibertys' store in the early part of September to collect their account, saw the stock of goods he then had on hand, learned of the poor condition of his business, and, being unable to collect anything from him, on reporting to his firm, probably informed them of their debtor's situation. This, at least, is the fair inference. Indeed, the circumstances attending the transaction were such that the District Judge was warranted in disregarding the testimony of this partner, and in finding that his firm knew, or had reason to believe, that Gilibertys was insolvent. Surely it does not appear that the finding was clearly wrong, and, such being the case, it will not be disturbed.

[3] The appellee has filed no brief, and was not present at the argument. Such being the case the order is:

The decree of the District Court is affirmed, without costs.