RALPH V. FRANK *vs.* ETHELYNE G. FRANK.

Berkshire.    September 18, 1956. — December 6, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Trust*, Resulting trust. *Gift. Husband and Wife*, Gift. *Equity Pleading and Practice*, Appeal, Rehearing.

A party not appealing from a decree in a suit in equity cannot have the decree made more favorable to him on the opposing party's appeal. [131]

In a suit in equity by a husband to establish a resulting trust in property purchased in the name of his wife, the defendant, but paid for entirely by him, a decree adjudicating that the plaintiff was the equitable owner of the property was not justified by findings of a master which established merely that it was not intended that the defendant should have the sole beneficial interest in the property and left it uncertain whether some interest or no interest in her was intended and whether or not the whole or a fixed fractional interest in the plaintiff was intended. [134–136]

Because subsidiary findings by a master in a suit in equity did not afford an adequate basis for the final decree entered and needed clarification

in the light of applicable principles of law discussed by this court, the final decree and an interlocutory decree confirming the master's report were reversed and the suit was remanded to the trial court for further hearing. [136–137]

BILL IN EQUITY, filed in the Superior Court on September 13, 1951.

The suit was heard by *Fairhurst,* J., on a master's report.

*John N. Alberti, (Andrea F. Nuciforo & Bernard Lenhoff* with him,) for the defendant.

*Harold R. Goewey, (Clement A. Ferris & William Boreski* with him,) for the plaintiff.

SPALDING, J. The plaintiff brings this bill in equity against his wife to establish his rights in (1) a real estate mortgage and note secured thereby on premises owned by the Cheshire Inn Corporation, hereinafter sometimes called the corporation; (2) personal property and fixtures on the premises of the corporation; (3) one hundred shares of the capital stock of the corporation; (4) a parcel of real estate in Adams; and (5) certain United States government bonds. The case was referred to a master under the usual rule and his report was confirmed by an interlocutory decree. A final decree was entered adjudicating that the plaintiff was the equitable owner of the note and real estate mortgage, the personal property and fixtures, and the one hundred shares of capital stock of the corporation. The decree further provided that the plaintiff and the defendant held the parcel of real estate in Adams as tenants by the entirety and that the plaintiff had no interest in the United States government bonds. The defendant appealed.

We are not concerned with that part of the decree which pertained to the real estate in Adams and the government bonds, for the plaintiff did not appeal and is not entitled to a more favorable decree. *Greenaway's Case,* 319 Mass. 121. Thus the questions for decision relate to the note and real estate mortgage, the personal property and fixtures, and the one hundred shares of stock.

The following is a summary of the pertinent findings of the master: In 1949, the plaintiff and the defendant, then

living together as husband and wife, desired to undertake the management and operation of a hotel, the principal business of which would be a restaurant and bar. The plaintiff agreed to furnish the money for the enterprise and it was "his idea that the business would be a family affair." Because he was then employed elsewhere, the plaintiff did not want his name to be used in connection with the business.

The plaintiff and the defendant, after looking over several hotels, decided that a hotel in Cheshire, known as the Cheshire Inn and operated by the Cheshire Inn Corporation, would be suitable for their purposes. Accordingly, an oral agreement was reached between one Frank Landy, president and part owner of the corporation, on the one hand, and the plaintiff and the defendant on the other, whereby a new corporation was to be formed. Landy, to whom the old corporation had assigned its liquor and common victualler's licenses in satisfaction of a substantial debt for past wages, would receive fifty per cent of the stock of the new corporation in return for his transferring to it these licenses. The plaintiff and the defendant were to receive the other fifty per cent of the stock. The plaintiff was to furnish the financial backing for the venture, and the defendant was to contribute her services. There never was any understanding, nor even any discussion, between the plaintiff and the defendant as to how their fifty per cent share of the stock would be divided between them when the new corporation was formed. In fact, for reasons which are not apparent, the new corporation was never organized.

At the time of the above mentioned oral agreement the Greylock National Bank held a mortgage on the real estate of the Cheshire Inn Corporation and a mortgage on its personal property; it also held as security a certificate of the one hundred shares of the capital stock of the corporation. Payment of the note secured by these mortgages was then in arrears and the corporation was being pressed for payment. Thereafter, on January 26, 1950, the plaintiff

acquired from the bank both mortgages and the certificate of stock. The amount paid therefor, $14,442.05, was furnished by the plaintiff. The bank, at the plaintiff's direction, assigned the mortgages and stock to the defendant. Thereafter, at the plaintiff's direction, the chattel mortgage was foreclosed and the property covered by it was purchased in the name of the defendant. Foreclosure proceedings of the real estate mortgage also were commenced, but by reason of an injunction issued by the United States District Court for the District of Massachusetts they have not been completed.

Soon after the assignment of the mortgages to the defendant, the plaintiff, the defendant and Landy began to refurnish, reëquip and repair the Cheshire Inn. All the cost thereof (not less than $50,000) was supplied by the plaintiff from his own funds. The work of renovating the inn was supervised by Landy and the defendant (the latter devoting practically all of her time to it), with such help as the plaintiff could spare from his work as a salesman. It was the intention of everyone concerned that all of the new equipment would enure to the benefit of the proposed new corporation.

The Cheshire Inn, the name of which had been changed to County Squire, reopened on April 18, 1950, under the management of Landy, Landy's wife, the plaintiff, and the defendant. Landy operated the bar and the defendant had charge of the rest of the business. Each drew a salary of $50 per week. The plaintiff, who drew nothing from the business, did the bookkeeping, gave advice, and kept in touch with the business generally while still carrying on his work as a salesman. The plaintiff has not been reimbursed for any of the sums invested in the enterprise.

The plaintiff and the defendant separated on August 19, 1951, and thereafter the plaintiff has had nothing to do with the operation of the inn. After that date the business was operated by the defendant and Landy.

On the foregoing findings, the master made the following ultimate findings: "[T]he plaintiff did not intend to make a

gift, settlement, or advance to the defendant as her sole property and for her sole benefit of either the real estate mortgage or the chattel mortgage on the Cheshire Inn property, or the note or notes secured thereby, or of the certificates of capital stock of the Cheshire Inn Corporation, assigned to the defendant on January 26, 1950. Neither did he intend to make such a gift, settlement or advance to the defendant as her sole property, and for her sole benefit, of the personal property securing said chattel mortgage and purchased in the name of the defendant on foreclosure sale, nor of the equipment purchased with the plaintiff's money and placed on or installed in the County Squire, formerly the Cheshire Inn premises. The plaintiff looked forward to the formation of a corporation or corporations, as set forth hereinbefore . . . which would own the County Squire premises and carry on the County Squire business. What would be the status of such property or business if, as actually happened, no such corporation was formed, was never definitely formulated in the plaintiff's mind, as he never anticipated such a happening. But in general, based upon the above findings of fact, and the inferences properly to be drawn therefrom, and if permissible so to do, the master finds that both the plaintiff and the defendant, prior to August 19, 1951, intended and desired, that the Frank interest in the personal and real property connected with the Cheshire Inn Corporation and County Squire business purchased, with the plaintiff's money, should be used as a family business enterprise to be owned both by the plaintiff and the defendant jointly for their benefit and ultimately for the benefit of their daughter, Barbara."

The question for decision is whether the foregoing findings were sufficient to justify the decree entered below to the effect that the plaintiff was the equitable owner of the real estate mortgage and note, the chattels and fixtures in the inn, and the one hundred shares of stock of the Cheshire Inn Corporation. We are of opinion that they were not.

In determining whether the plaintiff is the equitable owner of the property in issue we must decide whether the defend-

ant took title to the property in circumstances whereby the beneficial interest would enure to the plaintiff by way of a resulting trust, or whether the plaintiff made a gift of the property or a part thereof to the defendant.   The governing principles have been set forth in numerous decisions and may be summarily stated.   Ordinarily where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust is presumed in favor of the person by whom the purchase price is paid.   *Druker* v. *Druker*, 308 Mass. 229, 230.   *Collins* v. *Curtin*, 325 Mass. 123.   Restatement: Trusts, § 440.   But where the transferee is the wife of the person by whom the purchase price is paid there is a presumption that a gift was intended.   *Edgerly* v. *Edgerly*, 112 Mass. 175, 179.   *Sigel* v. *Sigel*, 238 Mass. 587, 588.   *Liberty Trust Co.* v. *Hayes*, 244 Mass. 251, 254.   *Berry* v. *Kyes*, 304 Mass. 56.   However, this presumption is rebuttable and the husband can establish a resulting trust by proving that it was not intended at the time of the transfer that the wife should take a beneficial interest in the property by way of gift, settlement or advancement.   *Pollock* v. *Pollock*, 223 Mass. 382, 384.   *Moat* v. *Moat*, 301 Mass. 469, 471.   *Thompson* v. *Thompson*, 312 Mass. 245, 247.

In the case at hand the master concluded on the basis of his subsidiary findings (see *Moat* v. *Moat*, 301 Mass. 469, 470–471) that the plaintiff "did not intend to make a gift, settlement, or advance to the defendant as her *sole* property and for her *sole* benefit" (emphasis supplied).   But the pivotal question is not whether the defendant took the property for her "*sole* benefit" but whether she took *any* beneficial interest in it at all.   In order to establish a resulting trust the plaintiff was required to prove that he himself furnished either the entire consideration or a specific and definite part thereof, for which it was intended he should receive the whole or a determinate and fixed fraction of the estate conveyed.   *Pollock* v. *Pollock*, 223 Mass. 382, 384. *Moat* v. *Moat*, 301 Mass. 469, 471.

That the plaintiff paid the entire consideration for the property involved is clear from the findings.   But what the

findings do not make clear is what interest, in whole or in part, it was intended he should take. All we are told is that he did not intend to make a gift of the property to the defendant for her *sole* benefit. The master's conclusion suggests that the defendant may have taken some beneficial interest in the property and this interpretation finds some support in another conclusion. He further found that "both the plaintiff and the defendant, prior to August 19, 1951, intended and desired, that the Frank interest in the personal and real property connected with the Cheshire Inn Corporation and County Squire business purchased, with the plaintiff's money, should be used as a family business enterprise to be owned both by the plaintiff and the defendant jointly for their benefit and ultimately for the benefit of their daughter, Barbara." We recognize, of course, that a resulting trust must arise, if at all, at the time of the transfer to the alleged trustee. *Dwyer* v. *Dwyer*, 275 Mass. 490, 494. *Saulnier* v. *Saulnier*, 328 Mass. 238, 240. Still, this finding read with the other makes it difficult to say with any confidence that no beneficial interest in the wife was intended.

It is apparent from the findings that the plaintiff took some beneficial interest in the property. But it is not clear what interest he took. If it was intended that he was to have a beneficial interest in a fixed and fractional part of the property there would be a resulting trust in his favor to the extent of such interest. *Skehill* v. *Abbott*, 184 Mass. 145. *O'Brien* v. *O'Brien*, 256 Mass. 308, 310. *Powell* v. *Powell*, 260 Mass. 505, 508. But if he proved no more than an intent to take an undetermined beneficial interest in the property, as distinct from a specific or distinct interest, no resulting trust would arise in his favor. *Edgerly* v. *Edgerly*, 112 Mass. 175, 179. *Karas* v. *Karas*, 288 Mass. 460, 462–463.

We are of opinion that in order to do justice this case ought to stand for further hearing, as the findings of the master do not afford an adequate basis for a decree and are in need of clarification in the light of the principles discussed

above.   See *Watkins* v. *Simplex Time Recorder Co.* 316
Mass. 217, 224–225; *Turgeon* v. *Turgeon,* 326 Mass. 384,
386–387.   Whether the case should be recommitted to the
master or heard by the court is for the Superior Court to
determine.

The entry is to be: Final decree reversed; interlocutory
decree confirming report of master reversed; report of
master set aside; the suit to stand for further proceedings
in the Superior Court.

*So ordered.*