MARK C. ROBINSON & another, executors, vs.
LOUISE S. ROBINSON
(and a companion case between the same parties).

Essex.    November 8, 1974. — December 31, 1974.

Present: QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Trust,* Resulting trust.    *Husband and Wife,* Gift.    *Gift.*

Where a husband and wife were enabled to obtain a mortgage and
purchase a residence only because the wife's parents paid for
extensive repairs to the premises, and where the husband had the
deed to the residence made to his wife because he did not wish the
house in his estate on his death, the lower court correctly concluded
that the husband intended to give the wife the entire beneficial
interest in the property and that there was no resulting trust in his
favor for half of the property. [583-586]

Family heirlooms given by a husband's mother to a husband and wife
during their marriage with the implied intent that the gifts remain in
his family, were the property of the husband after his wife divorced
him and remarried. [586-588]

TWO BILLS IN EQUITY filed in the Probate Court for the
county of Essex on May 5, 1972, and October 30, 1972,
respectively.

The suits were heard by *Pettoruto,* J.

*James C. Heigham* for the plaintiffs.

*W. Hugh M. Morton* for the defendant.

KAPLAN, J.    The marriage of T. Dudley Robinson and
Louise Storer Robinson ended in divorce in July, 1972, and
Mrs. Robinson remarried.[1] Mr. Robinson in 1972 brought
two equity petitions in the Probate Court for the county of
Essex against Mrs. Robinson, among other things to deter-
mine their respective interests in the family home in North

---

[1] For simplicity's sake we do not substitute Mrs. Robinson's new name. Pending
the present appeals, Mr. Robinson died and his executors have been formally
substituted as parties in his place.

Andover (first case), and in various items of personal property (second case), all acquired during the marriage.

In the first case Mr. Robinson claimed a half interest by way of resulting trust in the real estate, record title to which has from the outset been in the name of Mrs. Robinson. The probate judge decreed that the real estate was the property of Mrs. Robinson to the exclusion of Mr. Robinson, and dismissed the petition. In the second case, the probate judge made a number of different dispositions of sundry items of personal property. Remaining in dispute[2] are a painting, silverware, and china; in these the judge held Mrs. Robinson had no interest. Mr. Robinson appealed as to the real estate and Mrs. Robinson as to the personal property just mentioned. We have the benefit of reports of material facts in both cases and a joint designation of record on both appeals consisting of exhibits and testimony of witnesses including notably Mr. and Mrs. Robinson. Our account draws from the reports or facts consistent with them.

1. *The house in North Andover.*   The Robinsons were married in 1940, resided briefly in Cambridge, and then moved to Boxford. In the fall of 1943, after their first child was born, Mrs. Robinson began to search actively for a house that would be more commodious and less remote from Boston. When the brokers showed Mrs. Robinson houses that seemed more or less suitable, she sought the opinions of her parents, Mr. and Mrs. Leslie H. Storer, as well as Mr. Robinson. Finally the house at 166 Salem Street, North Andover, was selected. It required extensive repairs and rehabilitation, and the couple did not have the resources. Mrs. Robinson's parents undertook to pay for the work involved. Without the contemplated improvement of the premises the purchase money mortgage could not have been obtained. On March 4, 1944, a purchase and sale contract at a price of $6,000 was executed by the seller and

---

[2] Although Mrs. Robinson appealed from the entire decree in the second case, she attacks only the disposition made of certain items considered under point 2 of this opinion.

Mr. Robinson. Either Mr. Robinson or Mr. Storer made a $500 down payment (the doubt was not resolved in the testimony). At the closing on March 25, the $5,663.47 due after adjustments was paid as follows: $163.47 by Mr. Storer's check; $1,300 by Mr. Robinson's check; and $4,200 by check of the mortgagee Suffolk Savings Bank for Seamen. The mortgage was for $5,000 with Mr. and Mrs. Robinson signing the mortgage note; by agreement $800 was withheld as an escrow. The deed was in the name of Mrs. Robinson alone, and she has kept the deed among her own possessions ever since. Regarding the deeding of the property to Mrs. Robinson, Mr. Robinson testified that he recognized he was older than Mrs. Robinson and for tax reasons, as he conceived them, he did not want the house to fall into his estate on his death; he referred also to the investment that Mrs. Robinson's parents were to make in the property. On the other hand, Mr. Robinson testified to an understanding with Mrs. Robinson for a joint venture with respect to the property; this Mrs. Robinson said she did not recall, nor was it found by the judge.

Mr. Storer paid the whole cost of the changes and refurbishing of the house amounting to about $10,000 less the remainder of $800 coming in under the mortgage. He supervised the progress of the work on the house which was substantially completed toward the end of 1944. It had previously been agreed that, as part of the remodeling, the "ell" part of the house would be made into a separate apartment to be used by the Storers; this was done, and until the death of Mr. Storer in 1964, they lived there in the summers. They regularly paid one-half the real estate taxes and their charges for utilities. Over the years sizeable expenditures were made for a driveway, swimming pool, and so forth, as well as for maintenance. Mortgage borrowings to meet the costs (the notes being again signed by Mr. and Mrs. Robinson) were ultimately discharged by Mr. Robinson. Finally, we should mention the probate judge found that in talk of divorce in 1970, Mrs. Robinson offered to give Mr. Robinson one-half the property.

Counsel on the part of Mr. Robinson is prepared to

concede that Mrs. Robinson is the beneficial owner of a half interest in the property and would trace this to the Storers' important contribution, but it is not easy to see just why this fraction is chosen. In attempting to establish a resulting trust in Mr. Robinson's favor for the balance, counsel conjures with a number of "rules" or "presumptions." He starts with the commonplace proposition that the person who pays for a conveyance to another is ordinarily entitled to a beneficial interest in the property. Restatement 2d: Trusts, § 440 (1959). He then encounters difficulty with an often cited requirement that to raise such a resulting trust the payment made must be not some general contribution to the price but the whole or some fixed share of it. Compare *Frank* v. *Frank,* 335 Mass. 130, 136 (1956), with *Bodman* v. *Martha's Vineyard Natl. Bank,* 330 Mass. 125, 129 (1953). See *Druker* v. *Druker,* 308 Mass. 229, 230-231 (1941). He also has trouble under the cases in analyzing whether Mrs. Robinson's assumption, as a cosigner of the mortgage note, of an obligation to discharge it, should count as a contribution by her to the price. Cf. *Goldman* v. *Finkel,* 341 Mass. 492, 494 (1960); *Davis* v. *Downer,* 210 Mass. 573 (1912). Then he is confronted with a special rule that, where the husband makes a payment to procure a conveyance to his wife, there is a presumption that he intends a gift to her which may overcome the implication of a resulting trust. *Krasner* v. *Krasner,* 362 Mass. 186, 189 (1972). *Frank* v. *Frank, supra,* at 135. This leads him, in an extremity, to argue that as the law of the Commonwealth holds (so he says) that a parallel presumption does not arise when the wife pays for a conveyance to the husband, the special rule should fall as unconstitutionally discriminatory. To this Mrs. Robinson would answer that there can be no constitutional problem about interpretive rules that, at least as of thirty years ago, may have been plausible prima facie guides to intention; she says, further, that properly understood, the law of the Commonwealth is not one-sided, as claimed, but has recognized a corresponding presumption in favor of the husband as conveyee. Compare *Glover* v. *Waltham Laundry Co.* 235 Mass. 330

(1920), with *Ross* v. *Ross,* 2 Mass. App. Ct.      ,
(1974),[a] and cases cited.

Fortunately there is no need on the present record to go
into the pertinence, limits, or possible effects of the "rules"
or "presumptions" that are invoked. These embody or rest
on common sense ideas for discerning intention, but they
operate, when they operate at all, only in the absence of
countervailing or rebutting factors, the goal in all cases
being to reach a fair interpretation of the totality of the
facts. See e.g., *Krasner* v. *Krasner, supra,* at 189. Here,
on the basis of all the evidence before him, the judge found
that the design of the original transactions as understood
by the principal actors was to make Mrs. Robinson the
owner of the property in the full sense; in particular, "the
petitioner [Mr. Robinson] intended to give her the entire
beneficial interest in it." Supporting the findings of in-
tention were Mr. Robinson's purpose to keep the house out
of his eventual estate and his recognition that, had it not
been for the Storers, the house would not have been
acquired. As the parties could have seen it, the Storers,
with some contribution from Mr. Robinson, were in effect
buying the house for their daughter. The critical time was
that of the initial transactions. See *Saulnier* v. *Saulnier,*
328 Mass. 238, 240 (1952); *Goldman* v. *Finkel, supra,*
at 494. True, the meaning of an event or the nature of an
understanding may sometimes be elucidated by later
conduct, but here the handling of expenses and charges
after 1944 did not necessarily contradict the judge's reading
of the transactions of that year. Accepting the judge's
findings upon unharmonious oral testimony, we concur in
his conclusion. *Hiller* v. *Hiller,* 305 Mass. 163, 164 (1940).

2. *The painting, silver, and china.* The judge's determi-
nation, also resolving oral testimony, that at the time of
trial Mrs. Robinson had no interest in the disputed items of
personal property, will likewise be upheld.

The petition in the second case was precipitated by
rather drastic action on the part of Mrs. Robinson. After

---

[a] 314 N. E. 2d 888, 893.

she had moved out of the North Andover house in 1971 and taken up residence in Maine, she appeared at the house on two occasions in 1972 when no one in authority was present and emptied two trunks and carried the contents, together with certain pictures taken from the walls, back with her to Maine and stored them in a local bank. Mr. Robinson in his petition sought the return of these articles and, more generally, an adjudication of the ownership of a considerable variety of household articles and furnishings.

The judge dealt with the groups of items of the miscellany in the light of the facts as to each. On this appeal attention centers on the silverware from the trunks, a J. M. W. Turner painting entitled "Abbey Riveault," and two barrels of china. We follow the judge's narrative about these items. They were gifts from Mr. Robinson's mother, Mrs. Caroline Robinson. She had not approved of her son's marriage and her relationship to her daughter-in-law was "rather guarded" until the grandchildren came along. She had "a strong sense of family, that is the Robinson family." She made frequent trips to the North Andover home to visit the couple and the grandchildren, and from 1944 to 1950 presented them with numerous gifts. The two trunks containing family silver were kept at or near Intervale, New Hampshire, where Mrs. Caroline Robinson had for many years maintained a summer home which after 1950 became her regular residence. At separate times the trunks were delivered to North Andover. The silver, much of it with monograms showing its origin, derived from the Robinson family. Evidently some of the pieces could properly be called heirlooms. The judge wrote: "I find that the various pieces of silverware were given to the parties for their use as a family and then to go to their children. Each time she [Mrs. Caroline Robinson] expressed her intent and expectation that they were to use the silverware as a family and then it was to go to their children. I find as a fact that it was her intent that at all times these pieces of silverware were to remain in the Robinson family." Now the daughter-in-law Mrs. Robinson had removed herself from the family, had remarried, and had a new name. Four children lived

with Mr. Robinson, none with the remarried Mrs. Robinson. "[S]he is no longer a member of the Robinson family" and so had no further interest in the silver. A like result followed as to the Turner painting which Mrs. Caroline Robinson inherited from her husband, Mr. Robinson's father, on his death in 1944; and so also as to the barrels of china:[3] one, belonging to Mr. Robinson's father, had been sent to North Andover by Mr. Robinson's aunt Harriet at the request of Mrs. Caroline Robinson; the other came from the latter's family home in New York.

It would not be helpful to attempt to parse meticulously the words used by Mrs. Caroline Robinson in connection with her gifts, as those were somewhat variably testified to many years after the event, or to try to formulate the exact state of the title to the property down through the generation of grandchildren. The judge strove for the general sense of these gifts in their setting, and he properly confined himself to the issue of right as between Mr. and Mrs. Robinson. We think he reached a sound conclusion.

*Decrees affirmed.*

---

[3] The china is dealt with in the report of material facts, not in the decree, but the parties treat it as if embraced in the decree, and we do the same.