JAMES SANDOR FUSS *vs.* MARCIA PITCAIRN FUSS (No. 2).

Barnstable.   May 4, 1977. — September 27, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Husband and Wife,* Gift.   *Gift.   Deed,* Construction.

Evidence warranted a finding that the conveyance of certain property on the condition that the grantee pay the gift tax attributable to the transaction was a gift without consideration rather than a sale. [449-450]

Evidence warranted a finding that the donor of certain property intended to convey it to his daughter and her putative husband even though at the time of the conveyance the donees erroneously believed that the gift was to the daughter alone. [450]

A gift of real estate to a husband and wife as tenants by the entirety was not defeated by a subsequent determination of the invalidity of the marriage but became a conveyance to them as tenants in common. [450]

Where certain real estate was given to a husband and wife on the condition that they pay the gift taxes attributable to the gift and the taxes were paid out of the wife's funds, after the invalidation of their marriage the wife was entitled to an equitable lien on the property in the entire amount of her payment plus interest from the time of the payment to the date of partition or sale since her payment of the entire gift tax was a requisite to her husband's acquisition of his interest in the property. [450-451]

BILL IN EQUITY filed in the Probate Court for the county of Barnstable on June 28, 1974.

The suit was heard by *Knight,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Daniel F. Featherston, Jr.,* for the defendant.
*Joseph D. Steinfield* (*Mary W. Nelson* with him) for the plaintiff.

LIACOS, J.   The parties to this case were previously before this court in *Fuss* v. *Fuss* (*No. 1*), 372 Mass. 64 (1977), which dealt with matters pertaining to their putative marriage. The present controversy arises out of the same factual background. This litigation concerns the ownership of real and personal property in Oyster Harbors in the town of Barnstable which formerly belonged to the defendant's father, the Reverend Theodore Pitcairn. By deeds dated November 13, 1972, Reverend Pitcairn conveyed the property to Marcia and James as tenants by the entirety; at that time, the donees erroneously believed the gift was to Marcia alone. Since learning the nature of the deed, Marcia has refused to acknowledge James's ownership rights. James therefore brought this suit for declaratory judgment to establish his interest in the property.

The probate judge held that the parties are the owners, as tenants in common, of the real and personal property in dispute. The judge further held that the defendant, Marcia, has an equitable lien on the property in the amount of certain gift tax payments made by her, with interest thereon. Both parties took an appeal from this amended judgment of the Probate Court. The matter is before us on our allowance of the application of James for direct appellate review. Mass. R. A. P. 11, 365 Mass. 854 (1974). We affirm the judgment of the Probate Court.

We summarize the relevant facts as found by the probate judge. For many years prior to the disputed transfer, Reverend Pitcairn had spent his summers at the Oyster Harbors property which is the subject of this litigation. During the summer of 1970, Reverend Pitcairn — then seventy-six years old — discussed the disposition of the property with members of his family. Marcia indicated that she would like to have it.

In the fall of 1970, James spoke with a Mr. Brown, the associate general counsel of the Pennsylvania company

which manages the Pitcairn family trusts, concerning plans for the Oyster Harbors property. Mr. Brown indicated that Reverend Pitcairn was unwilling to take any action at that time. There were no further discussions until 1972, when Reverend Pitcairn, Marcia and James visited the situs, paced the boundaries, and spoke about transferring title. Because Reverend Pitcairn was in a very high gift tax bracket, he would not make an inter vivos gift unless the donee agreed to pay the gift tax under the "net gift method." Mr. Brown advised James, Marcia and her father that the gift tax — based on an appraiser's estimate of $215,000 — would be approximately $80,000. The judge found that all persons realized that the tax would have to be paid by Marcia, as James did not have sufficient funds of his own.

Mr. Brown subsequently prepared the documents necessary to effect transfer of the property. In so doing, he represented all three parties to the transaction. Having received no instructions as to the form in which title was to be conveyed, he decided on his own initiative to list the grantees as tenants by the entirety. Neither James nor Marcia was aware of this decision at the time. Neither Mr. Brown nor Reverend Pitcairn knew that the parties were experiencing marital difficulties; indeed, Reverend Pitcairn was never aware (although Mr. Brown was) that Marcia's prior Mexican divorce and marriage to James were highly questionable.[1]

Mr. Brown engaged a Massachusetts attorney to prepare the deed passing title to James and Marcia as tenants by the entirety. Mr. Brown's letter of instructions to that lawyer related that "Reverend Pitcairn desires to transfer the property to his daughter and son-in-law. He will receive no consideration for the transfer, but the grantees have agreed to pay and discharge the Federal Gift Tax. ... The grantees are Marcia Pitcairn Fuss and James San-

[1] A judge of the Probate Court ultimately found and ruled that no valid marriage had ever existed between the parties. See *Fuss* v. *Fuss* (*No. 1*), 372 Mass. 64, 66, 68 (1977), in which we affirmed that conclusion.

dor Fuss." A copy of this letter was sent to Reverend Pit-
cairn, who made no objection to Mr. Brown. The judge
found that Reverend Pitcairn, although then seventy-
eight, was "alert for a man of his age, aware of the conse-
quences of what he did, and of the effect of gifts to his
children and their spouses. He paid close attention to his
business affairs."

Mr. Brown subsequently spent a half hour with Rever-
end Pitcairn, just before the latter departed on a trip to
Europe. Mr. Brown showed him various documents relat-
ing to the transfer of the Oyster Harbors property, and ex-
plained that "[t]his is the deed that conveys the property
to Marcia and James and this is the document that con-
veys the personal property to Marcia and James. This is
the agreement concerning the payment of the Gift Tax."
Reverend Pitcairn then signed the papers. The judge found
that he "had the opportunity to read the three docu-
ments ... that he understood the contents therein, al-
though he may not have read them line by line, and that
he knew that the property was being conveyed to James
and Marcia."

Mr. Brown thereafter brought James and Marcia a
copy of the letter and asked them to countersign it so as
to acknowledge their agreement to pay the gift tax. This
letter did not disclose that the deed had been drawn so as
to convey the property to them jointly. On two occasions,
Marcia asked James why his name appeared on the tax
letter; in reply, he expressed his belief that it was a mere
formality for tax purposes, and not for the purpose of giv-
ing him a beneficial interest. Both parties later counter-
signed the letter and returned it to Mr. Brown.

In February, 1973, Reverend Pitcairn executed his
United States quarterly gift tax return showing a gift of
the Oyster Harbors property and its contents to Marcia
and James as tenants by the entirety. In March of that
year, Mr. Brown caused the gift taxes to be paid out of
Marcia's funds held by the family company.

After the parties separated in June, 1973, James went
to the offices of the Pitcairn family company to obtain

copies of papers pertaining to him. He then saw a copy of the Oyster Harbors deed and learned for the first time that he had an apparent interest in the property.[2] He also discovered that Reverend Pitcairn had given him gifts totaling about $13,000 in stock during the preceding two years. Although Reverend Pitcairn had learned of the separation in the summer of 1973, he never attempted to revoke the gifts. Marcia did not discover that James's name was on the deed until after her father's death in December, 1973.

1. The defendant Marcia urges that the transfer of property was a sale which should be reformed to accord with her understanding of the transaction. She claims that she was a purchaser for value of the property and that the deed should be reformed to give her sole title.

The judge found that "[t]he conveyance of the Oyster Harbors property was a gift without consideration, and not a sale, and was so understood by all the parties." This conclusion is supported by substantial evidence. From the outset, transfer of the property was discussed as a gift. The deed of the real estate recited "no financial consideration"; the contents of the house were expressly conveyed by a deed of gift. Both parties acknowledged a letter agreeing that "this gift is on the basis that you will pay the gift tax attributable to the gift . . . ." The effect of a purported transfer will be determined by the design of the original transaction as understood by the principal actors. *Robinson* v. *Robinson*, 366 Mass. 582, 586 (1974). In this case, the intent of Reverend Pitcairn as transferor is of particular significance. *Robinson* v. *Robinson, supra. Stryker* v. *Kennard*, 339 Mass. 373, 377 (1959). All persons

---

[2] On this appeal, the defendant urges us to set aside the judge's finding that James did not realize that he was a codonee until he saw the deed. While the gift tax letter should perhaps have put both parties on notice (the judge found that it "was notice to Marcia of a joint conveyance"), there was a finding that the parties then believed the joint form related to tax matters and not to title. Suggestions to the contrary at trial were at best ambiguous. We cannot say that the finding was clearly erroneous. Massachusetts Rules of Domestic Relations Procedure 52 (a) (1975).

involved conceived of the transaction as a gift. The agreement of one or more donees to pay certain costs associated with the transfer did not fundamentally alter the parties' conception of the nature of the conveyance. An inter vivos gift is not invalid merely because subject to a condition. *DeCicco* v. *Barker,* 339 Mass. 457 (1959). The judge properly declined to reform the conveyance.

2. Similarly, in determining the beneficiaries of a gift, we give substantial weight to the intent of the donor. *Robinson* v. *Robinson, supra. Stryker* v. *Kennard, supra.* As noted above, there was considerable evidence at trial indicating that Reverend Pitcairn knew the conveyance had been structured to pass title to Marcia and James as tenants by the entirety. Since he voiced no objection to this form of gift, we agree with the probate judge that it presumably reflected his intent. This conclusion is supported by the observation that Reverend Pitcairn apparently enjoyed a good relationship with James, and had given him a substantial amount of stock before the parties separated.

The conveyance to Marcia and James as husband and wife, tenants by the entirety, is not defeated by a subsequent determination of the invalidity of the marriage. *Dane* v. *Walker,* 109 Mass. 179, 180 (1872). Express words are needed to create a joint tenancy. G. L. c. 184, § 7. The judge correctly ruled that a conveyance to parties as tenants by the entirety when such parties were thought by the donor to be husband and wife takes effect as a conveyance to them as tenants in common when they were not legally married. *Childs* v. *Childs,* 293 Mass. 67, 70-71 (1935). *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486, 489-490 (1927). Cf. *Morris* v. *McCarty,* 158 Mass. 11 (1893). We therefore uphold the judge's ruling that the parties own the real and personal property as tenants in common.

3. The judge ruled that "Marcia has an equitable lien on the locus to the amount of her payment of the Gift Tax, plus interest at 6% from the time of said payment to the date of partition or sale of the property." Cf. *Howland* v.

*Stowe,* 290 Mass. 142 (1935); *Kites* v. *Church,* 142 Mass. 586 (1886). The plaintiff has not pursued his appeal from the imposition of the lien, but argues only that the award of interest was error. The plaintiff's contention is that interest should be awarded on only half the amount of the tax, since only half of Marcia's tax payment applied to James's share of the property.

We construe the judge's rulings, as does the plaintiff, to apply to the entire amount of the gift tax paid by the defendant. Since Marcia's payment of the entire gift tax was a requisite to James's acquisition of his interest in the property, we are not prepared to say it was error for the judge to require that she be fully reimbursed for the sum she advanced to make this gift possible. It is also appropriate that the interest be based on the entire amount in computing the size of Marcia's lien.

Nor do we accept the plaintiff's claim that interest should not be awarded during the period when the defendant refused to allow him to use the property. The plaintiff argues that Marcia rented the house during the summers of 1974 through 1976, and retained the income — approximately $11,600 — for her own use. We note, however, that the real estate taxes alone exceeded $9,000 during those years. Since the expenses relating to the property were all paid by Marcia, we cannot say that she has reaped any financial gain at James's expense.

*Judgment affirmed.*