**O'SULLIVAN v. DONOHUE et al.**
**No. 3785.**

District Court, D. Massachusetts.

April 28, 1936.

Thomas M. A. Higgins and James H. Gilbride, both of Lowell, Mass., for plaintiff.

Fred K. B. Spellman, of Worcester, Mass., for defendants Jeremiah J. and Ellen Donohue.

Walter D. Allen, City Sol., of Worcester, Mass., for defendant City of Worcester.

BREWSTER, District Judge.

This bill of complaint is brought to set aside as in fraud of creditors a conveyance of real estate, an assignment of a mortgage, and a transfer of jewelry.

### Statement of Facts.

The defendant Jeremiah J. Donohue is a physician and for some years has been city physician of the city of Worcester. The defendant Ellen Donohue is a sister of Dr. Donohue.

Stating the facts chronologically, it has appeared in evidence that one Daniel J. Donohue, a brother of Jeremiah, was interested in the organization and launching of the Bancroft Trust Company, of Worcester, some time about 1922, and induced the defendant Jeremiah to become a director of that corporation, which position he held until the bank closed on December 15, 1931.

On January 7, 1926, Dr. Donohue's wife died testate, leaving all of her property to her husband. This included an apartment block at 31–35 Trumbull street, valued at $35,000, a mortgage note of Daniel J. Donohue for $10,000 and three diamond rings. Dr. Donohue had no other property and has since acquired none. The transfers rendered him insolvent.

Upon the death of his wife, the defendant Ellen Donohue came to live with Jeremiah, and from that time to the present she has made her home with him. The apartment building, above referred to, contains six or seven apartments, one of which was occupied by the defendants, a portion of the same being used for the doctor's office.

The defendant Ellen Donohue for many years has been employed as bookkeeper in a laundry in Worcester, receiving a salary of from $25 to $35 a week. The doctor has three daughters, one of whom is working, the others attending school in Boston. The defendant Ellen Donohue seems to have taken charge of the management of the apartment building, and, under an arrangement with the bank which holds a mortgage upon the property, is paying into the bank monthly the rentals received from the tenants, which, so far as they go, are applied to the payment of taxes and interest on the mortgage. This defendant collects all the rents and pays the bills for coal, janitor service, and repairs. In order to keep up these payments and to meet the household expenses, and the expense of educating the daughters, it has been necessary, for several years, for the defendant Ellen to turn in her salary. Dr. Donohue has done the same thing with the salary of $1,800 which he receives from the city of Worcester, and which represents substantially his entire income.

The encumbrance on the apartment block has been increased to $30,000. It was appraised for $35,000 in 1926, but at the present state of the real estate market in Worcester it is extremely doubtful whether there is any equity in the property.

The failure of the Bancroft Trust Company, together with that of other banks affiliated with the Federal National Bank, in December, 1931, caused considerable excitement in Worcester, and it was rumored that the affairs of the bank had been so conducted that directors' liability might result.

Dr. Donohue, on the 19th of January, visited his lawyer and said that he wanted to protect his sister Ellen and also his sister Bridget, from whom he had secured loans from time to time, aggregating several hundred dollars. Thereupon a deed was made of the apartment block, 31–35 Trumbull street, running to the defendant Ellen. A $10,000 mortgage, given by Daniel to the late wife of the defendant Jeremiah, was assigned to the defendant Ellen Donohue, and at the same time three rings, which the defendant Jeremiah had received from his wife's estate, were turned over to his sister Bridget.

Daniel had induced Jeremiah to become an accommodation indorser or maker upon certain negotiable instruments, two of which found their way to the Middlesex Trust Company and are now among the

assets in the hands of the receiver of that company. These assets consist of two notes, one dated September 15, 1931, for $3,500, payable to the Bancroft Trust Company; the other dated September 22, 1931, for $1,500, payable to the Lawrence Trust Company.

At the time of the transfers, the defendants did not know that the Middlesex Trust Company held these notes and received no notice of any claim of that trust company until some time thereafter.

I am satisfied, from all the evidence, that Dr. Donohue's sole purpose was to protect, as he said, his sister in order that she would ultimately be repaid, so far as the equity in the property and the mortgage would effectuate that result, for the money that she had contributed toward the property, the household expenses and the education of the children. In other words, his controlling motive was a desire to prefer his sister over any claims that might be presented against him as a director of the defunct trust company.

It was quite apparent that the doctor, like many other professional men, was not a good business man, and he had no definite idea that these particular notes, given as accommodation to his brother, were outstanding obligations.

### Conclusions of Law.

■ Massachusetts has enacted the Uniform Fraudulent Conveyance Act (G.L. Mass., Ter.Ed., c. 109A). The question whether these several transfers, made by the doctor, are voidable must be determined with reference to this act. Compare Lee v. State Bank & Trust Co. (C.C. A.) 54 F.(2d) 518, 85 A.L.R. 216; Irving Trust Co. v. Finance Service Co. (C.C.A.) 63 F.(2d) 694; Feist v. Druckerman (C. C.A.) 70 F.(2d) 333.

Section 4 of the Act provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The transfers made by the defendant Jeremiah Donohue fall within these provisions unless it can be said that the conveyances were made upon a fair consideration. The term "fair consideration" is defined in the act (section 3) as one given for property or obligation—

"(a) When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

The word "debt" is defined to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Section 1.

If, upon the facts of the case, it can be said that an antecedent debt was satisfied or an antecedent debt of a proper amount was secured, then the transfers would not come within the reach of the statute. The matter turns wholly upon whether the transactions between the defendants gave rise to a debt within the meaning of the word, as defined in the statute.

■ While the contribution of the two sisters might properly create moral obligation, I am of the opinion that they did not give rise to legal liabilities, "absolute, fixed or contingent"; and that, therefore, under the Laws of Massachusetts, the transfers must be held to be in fraud of creditors, even though there was no actual intent to defraud, as distinguished from intent presumed at law.

■ The plaintiff, nevertheless, is not entitled to prevail in these proceedings inasmuch as the federal courts have consistently applied the principle that a simple contract creditor, having no lien or specific interest in the property sought to be reached, cannot bring a creditor's bill until he has obtained a judgment and has otherwise exhausted his remedies at law. Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; Cates v. Allen, 149 U.S. 451, 13 S.Ct. 883, 977, 37 L.Ed. 804; Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 14 S.Ct. 127, 37 L.Ed. 1113; Harrison v. Triplex Gold Mines, Ltd. (C.C.A.) 33 F.(2d) 667; Sharp v. Hawks (C.C.A.) 80 F.(2d) 731.

This principle is applied in the federal court even though the statutes of the state may authorize a suit by a simple contract creditor. Hollins v. Brierfield Coal & Iron Co., supra; Sharp v. Hawks, supra.

The reason for refusing to follow the state statute is said to be that the equity

jurisdiction of the court cannot be enlarged by state statutes; nor can the debtor be deprived of a jury to determine the existence of the debt before it can be made the basis of an equitable proceeding. Sharp v. Hawks, supra.

It may be added that Sharp v. Hawks, supra, was a suit brought by the receiver of a national bank to set aside fraudulent conveyances made to the defendants named. There was judgment for the defendants which was affirmed by the Circuit Court of Appeals.

I am persuaded that the conclusions of the court in that case were sound and should be followed in the instant case.

Inasmuch as it appears that no judgment has been obtained against the defendant Jeremiah J. Donohue upon the notes held by the Middlesex National Bank, it would follow that plaintiff's bill must be dismissed. It is so ordered.