In re John W. HAUSE, d/b/a Hause Floor Co., Debtor.

John L. WHITLOCK, Trustee, Plaintiff,

v.

John W. HAUSE, and Marie H. Hause, Defendants.

Bankruptcy No. 79–1977–HL.
Adv. No. 80–0150.

United States Bankruptcy Court, D. Massachusetts.

July 10, 1981.

James H. Wexler, Susan S. Twarog, Herrick & Smith, Boston, Mass., for plaintiff.

John L. Whitlock, Herrick & Smith, Boston, Mass., Trustee.

Samuel Newman, Newman & Newman, P. C., Boston, Mass., for defendants.

## MEMORANDUM ON FRAUDULENT CONVEYANCE

HAROLD LAVIEN, Bankruptcy Judge.

The Plaintiff in this proceeding, John L. Whitlock, Trustee of the Debtor, John W. Hause, d/b/a Hause Floor Co., seeks to set aside the Debtor's conveyance of his interest in his home to his wife, Marie A. Hause. The Debtor and his wife, as tenants by the entirety, conveyed their interest in their home (hereinafter, the Property) to the Debtor's wife, individually, on November 12, 1976. The Plaintiff seeks to set aside that transfer under 11 U.S.C. § 544(b)[1] on the grounds that the conveyance can be avoided under Massachusetts General Laws, Chapter 109a, §§ 1–13 by an existing unsecured creditor (Joseph M. O'Callaghan Co.) who is presently, and has been since before November of 1976, an unsecured creditor of the Debtor. Since the Trustee is relying on the Massachusetts fraudulent conveyance statute, Massachusetts case law applies.

The Trustee sets out four separate grounds under Massachusetts General Laws, Chapter 109A for finding the transfer a fraudulent conveyance as to creditors and, therefore, avoidable by the Trustee: First, the conveyance was made without a fair consideration and was made while the Debtor was insolvent or it rendered him insolvent and, therefore, under Section 4[2] is fraudulent as to creditors. Second, at the time of the conveyance, the Debtor was engaged in a business for which the property remaining in his hands after the convey-

---

1.  § 544(b). The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(c) of this title.

2.  § 4. *Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

ance was an unreasonably small capital and, therefore, under Section 5,[3] the conveyance was fraudulent as to creditors and people who became creditors during the course of the Debtor's business. Third, at the time of the conveyance, the Debtor intended to or believed he would incur debts beyond his ability to pay as they matured and, therefore, under Section 6,[4] the conveyance was fraudulent as to the present and future creditors. Fourth, the conveyance was made with actual intent to hinder, delay or defraud present or future creditors and, therefore, under Section 7,[5] was fraudulent as to present and future creditors.

The parties stipulated to the following facts: Prior to November 12, 1976, the Property was owned by the Defendants as tenants by the entirety. On November 12, 1976, the Defendants, as tenants by the entirety, conveyed the Property to the Defendant, Marie H. Hause. From that date to the present, Marie Hause has not had sufficient income to make mortgage payments, property tax payments, insurance payments, utility payments or other payments necessary for the maintenance of the Property.

Before July 2, 1976, John W. Hause contracted with James and Patricia Peach to perform flooring services at their home. As a result of an accident which took place in the Peaches' home on July 2, 1976, Frederick Watson brought an action against Hause Floor Company on October 31, 1977 seeking damages in the amount of $250,000 and the Peaches brought an action against John W. Hause on November 3, 1977 seeking damages in the amount of $40,163.06.

Joseph M. O'Callaghan Co. is presently, and has been since before November of 1976, an unsecured creditor of the Debtor holding an allowable claim.

■ Massachusetts General Laws, Chapter 109A, § 4 sets out an objective test for determining whether a conveyance is fraudulent as to creditors:

> Every conveyance made and obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

The Plaintiff must establish both (A) that the Debtor was insolvent prior to the conveyance or was rendered insolvent by the conveyance and (B) that the conveyance was made without a fair consideration. The intent of the Debtor is not relevant.

The first element, insolvency, is defined in Section 2(1) of Chapter 109A:

> A person is insolvent within the meaning of this chapter when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

The Debtor's "assets" is defined in Section 1 to mean "property not exempt from liability for his debts". "Debt" is defined in Section 1 to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent".

■ The evidence as to John Hause's assets included a listing of accounts receivable dated 1976 and totalling $19,105.30 prepar-

3. § 5. *Conveyances by persons engaged in or about to engage in business.* Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction, for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent.

4. § 6. *Conveyances by person about to incur debts beyond ability to pay.* Every conveyance made and every obligation incurred without

fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature is fraudulent as to both present and future creditors.

5. § 7. *Conveyances made with intent to fraud.* Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

ed by Marie Hause. She testified that this list was prepared for their accountant to reflect receivables as of December 31, 1976. On the same sheet of paper and to the right of the accounts receivables listing was a listing captioned "Assets in 1976" prepared by John Hause which listed a truck, inventory, and one-fifth share in a realty trust, totalling $18,000.[6] To this figure, John Hause added the $19,105.30 for accounts receivable, arriving at a total as of December 31, 1976 for assets of $37,105.30. The Property did not appear on the list as an asset. According to John Hause, its value in 1976 was about $30,000.

The only other evidence of the value of John Hause's assets on the date of conveyance, November 12, 1976, is John Hause's testimony during the trial. He estimated that the assets value in mid-November, 1976 was about $53,000,[7] excluding the subject Property. The Court considers the listing prepared for the accountant at the close of the 1976 calendar year more reliable than a self-serving estimate by the Debtor made from memory over four years after the date in question. Moreover, the $53,000 estimate includes a one-half interest in the realty trust and the trust document clearly shows John Hause's interest to be one-fifth. Therefore, even if the Debtor's figures are used, except that the trust value is corrected from one-half to one-fifth, that reduces the trust share to $9,600. Subtracting the excess $14,400, even under the Debtor's corrected figures, his asset value in November, 1976 was $38,600, and I so find.

Another listing captioned "Income Tax" with a column heading "Accounts Payable" and dated "1976", which Marie Hause testified she prepared, shows business accounts payable totalling $61,034.80. The written records of accounts payable and the asset value of $38,600 taken together indicate that on December 31, 1976, the business debts of John Hause exceeded his assets by more than $22,000.[8] Considering the proximity of these dates, that is November 12 and December 31,[9] and the absence of any evidence that the December 31, 1976 summary of John Hause's financial status was not fairly reflective of his financial status on the date of the conveyance, and recognizing that the $22,000 does not include non-business debts, I find that the November 12, 1976 conveyance of his interest in the Property to Marie Hause, at a minimum, rendered John Hause insolvent as that term is defined under Section 3 of Chapter 109A.

Even though the conveyance rendered John Hause insolvent, it is not a fraudulent conveyance as to creditors under Section 4 if Hause received a fair consideration for the transfer. Section 3(a) of Chapter 109A states that fair consideration is given for property

(a) When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in

**6.** The Declaration of Trust for Sea Pearl Realty Trust shows John Hause to have a one-fifth beneficial interest in the trust property. The trust owned one building which, according to the testimony of John Hause, in late 1976 had a $21,000 mortgage and was valued at $70,000.

**7.** This figure included $19,000 for accounts receivable, $5000 for value of fully paid for truck, $2000 for stock and inventory, $3000 for checking account balance, and $24,000 for one-half interest in the trust property.

**8.** Not included in my calculation of John's debts is any factor representing potential liability for damages resulting from the July 2, 1976 accident at the Peach residence. The evidence

is conflicting and it remains unproved as to whether by November 12, 1976 the Debtor had any reason to anticipate any personal liability. It is noted in this context that over four months passed between the time of the accident and the transfer and another 12 months passed before any suit was filed.

**9.** The courts have shown a readiness to find insolvency at a given date where there is clear proof of insolvency at a slightly later date with no showing of substantial change intervening. See, e. g., *J. Ochoa & Hermano v. Perez Blanco*, 15 F.2d 618 (1st Cir., 1926).

amount not disproportionately small as compared with the value of the property or obligation obtained.

■ The evidence does not support a finding either that an antecedent debt was satisfied under (a) or that the conveyance was made to secure an antecedent debt under (b). It is undisputed that no money changed hands at the time of transfer. John Hause testified that he made an unconditional conveyance to his wife both to repay her for her contribution to the down payment on the Property when it was purchased in 1965 [10] and to compensate her for the office work she had been doing for his business since 1971 and for which he had been paying her only $1.50 per hour, or about $50.00 per week. However, for either of these asserted obligations to be categorized as an antecedent debt, it must, under the Section 1 definition of debt, be a "legal liability" of some kind. A "moral obligation" does not "give rise to legal liabilities, 'absolute, fixed or contingent'". *O'Sullivan v. Donahue*, 14 F.Supp. 605, 607 (D.Mass. 1936). If the Hauses felt the transfer was in satisfaction of a legally required compensation adjustment, they failed to so reflect this compensation in any manner on tax returns. In fact, John Hause testified that Marie was not even classified as an employee by the business. Moreover, there was no evidence presented that would support a finding of the fair value of any services rendered by Marie Hause.

As to the Hauses' contention that Marie Hause's contribution to the down payment on the Property constituted the antecedent debt, it appears that Marie Hause did contribute $3000 to the down payment. There is no evidence as to where the remainder of the down payment came from. It is agreed that John Hause has paid all the expenses for maintenance of the Property, including the mortgage payments. The Hauses argue that where Marie Hause has made a substantial contribution to the down payment and title to the Property has been taken as

tenants by the entirety, a resulting trust for the benefit of Marie was imposed on John Hause and constitutes an antecedent debt.

This characterization must fail for several reasons. Under Massachusetts law, a general contribution of a sum of money toward the purchase price of property without more is not sufficient to raise a resulting trust. In a husband and wife situation where one spouse paid a part of the purchase price and seeks to enforce a resulting trust, that spouse must establish that at the time of conveyance, it was not intended that the other spouse should take a beneficial interest in the property by way of gift, settlement, or advancement. *Robinson v. Robinson*, 366 Mass. 582, 321 N.E.2d 637 (1974). In addition, she must prove that the payment made by her was for some specific part or distinct interest in the estate. *Druker v. Druker*, 308 Mass. 229, 31 N.E.2d 524 (1941).

There was no evidence to suggest that at the time the Hauses acquired the Property in 1965 they intended anything else than to share ownership of the Property as tenants by the entirety. Marie Hause testified that the idea of having the Property in her name, alone, first came for an accountant in 1973, eight years after the original conveyance. As to whether Marie Hause's payment was for some distinct part or interest that this Court ought to protect, that point is academic since should the Trustee set aside the conveyance, Marie Hause will still be left with a substantial interest exceeding her proven contribution of $3000 out of a down payment of $6500. See 11 U.S.C. § 363(j).

Since I find no antecedent debt owed by John Hause to Marie Hause, John's transfer of his interest in the residence to his wife, Marie, was made without fair consideration. Having also found that the conveyance rendered John Hause insolvent, I find that under Section 4 of Chapter 109A, the con-

---

**10.** The purchase price of the Property was $17,500. It was financed through an $11,000 mortgage signed by both John and Marie Hause and a $6500 down payment.

veyance was fraudulent [11] as to any creditor in existence at the time it was made, that there was such a creditor who is still a creditor of the Debtor with a claim allowable under 11 U.S.C. § 502. That the Trustee may avoid the conveyance pursuant to 11 U.S.C. § 544(b) and that therefor the conveyance of the property at 45 Lindale Avenue, North Weymouth, Massachusetts from John W. Hause to Marie H. Hause is hereby voided and, further, that Marie H. Hause is enjoined and restrained from encumbering, selling, transferring or in any manner disposing of the property at 45 Lindale Avenue, North Weymouth, Massachusetts, other than a reconveyance of said property to John W. Hause and Marie H. Hause, as tenants by the entirety, pending further Order of the Court.

---

**11.** The conveyance having been found to be fraudulent under Section 4, the Court need not rule on the Trustee's allegations under Sections 5, 6 and 7 of Chapter 109A. Intent is not a requirement under both Sections 4 and 5; however, if any of these sections require a finding of intent to defraud, or a specific intent to incur debts beyond his ability to pay, I find no such intent on the part of either John Hause or Marie Hause.