**In re David G. OLIVER, Debtor.**

**John J. EGAN, Plaintiff,**

**v.**

**David G. OLIVER and Nancy C. Oliver, Defendants.**

**Bankruptcy No. 4–81–00103–G.**

**Adv. No. 4–81–0305.**

United States Bankruptcy Court, D. Massachusetts.

March 5, 1984.

Maurice M. Cahillane, Egan, Flanagan & Egan, Springfield, Mass., for plaintiff.

William J. Lyons, West Springfield, Mass., for defendants.

## MEMORANDUM AND ORDER ON COMPLAINT TO AVOID A FRAUDULENT TRANSFER

PAUL W. GLENNON, Bankruptcy Judge.

The complaint filed by the Chapter 7 Trustee, John J. Egan ("Trustee"), sought to avoid an alleged fraudulent transfer of real estate by the debtor and his wife. The Court has under advisement the motion of the debtor, David G. Oliver ("debtor"), for summary judgment and the Trustee's cross-motion for summary judgment. Neither party filed supporting affidavits.

### DISCUSSION

The debtor and his wife owned property as tenants by the entirety pursuant to common law principles of Massachusetts. Under the common law, the husband and wife each possessed an indefeasible survivorship right in the tenancy. However, during his lifetime, the husband's rights were superior to those of his wife. *D'Ercole v. D'Ercole*, 407 F.Supp. 1377 (D.Mass.1976). During his lifetime, the husband had the right to the rents and profits from, and the use, possession and control of, the property. *See Friedman v. Harold*, 638 F.2d 262 (1st Cir.1981) and *Voigt v. Voigt*, 252 Mass. 582, 147 N.E. 887 (1925). The husband could alienate his interest in the property, something that his wife could not do. *Phelps v. Simons*, 159 Mass. 415, 34 N.E. 657 (1893). Furthermore, the husband's creditors could attach the jointly owned property and have it sold on execution (subject to the wife's survivorship interest). *Raptes v. Pappas*, 259 Mass. 37, 155 N.E. 787 (1927). On the other hand, the wife's sole interest was that of survivorship which, because she could not sell, could not be reached by her creditors. *Pineo v. White*, 320 Mass. 487, 70 N.E.2d 294 (1946) and *Licker v. Gluskin*, 265 Mass. 403, 164 N.E. 613 (1929). The husband's creditors could reach his interest in property held as a tenant by the entirety. Likewise, he could sell his interest, subject always, however, to the wife's right of survivorship.[1]

On November 19, 1980, the debtor and his wife conveyed their property owned as tenants by the entirety, under common law principles, to a straw who reconveyed the property back to the debtor and his wife in order that their ownership would be governed by a revised Massachusetts statute, which substantially changed the rights of

---

1. General discussions of the rights and interests of husbands and wives in property held as tenants by the entirety pursuant to common law principles of Massachusetts may be found in: *West v. First Agricultural Bank*, 382 Mass. 534, 419 N.E.2d 262 (1981); Duffly, The Effect of the State Equal Rights Amendment on Tenancy by the Entirety, 64 Mass.L.Rev. 205 (1979); Glendon, Tenancy by the Entirety in Massachusetts, 59 Mass.L.Q. 53 (1974); Huber, Creditors' Rights in Tenancies by the Entireties, 1 B.C.Ind. & Comm.L.Rev. 197 (1961); and Lavien and Mencher, The Eclipse of Massachusetts Tenancy by the Entirety, 67 Mass.L.Rev. 170 (1982).

tenants by the entirety in the Commonwealth.

Under the revised statute, Mass.Gen. Laws ch. 209 § 1,[2] effective February 11, 1980, where property is held as tenants by the entirety, both the husband and wife are entitled equally to the rents and profits from, and the use, control and possession of, the property in question. Creditors of a debtor spouse may not reach the property interest of the debtor spouse if the property is the principal residence of the nondebtor spouse. However, the property is available to satisfy debts incurred by either spouse or a member of their family on account of "necessaries".

On February 13, 1981, the debtor filed his Chapter 7 petition. 11 U.S.C. § 522(b)(2)(B) provides that a debtor may exempt his interest in property owned as a tenant by the entirety to the extent it is exempt from process under applicable nonbankruptcy law.[3] Here, the debtor claimed his interest in property held as a tenant by the entirety exempt, relying on § 522(b)(2)(B).

The combined result of the November 1980 conveyances and the February 13, 1981 filing of the above-captioned Chapter 7 petition, was to place the property held by the debtor as a tenant by the entirety, taking advantage of his state exemptions, beyond the reach of the Chapter 7 Trustee and thus unavailable to satisfy the claims of his creditors.

While the Court recognizes that under § 522 it is perfectly proper and indeed may be good planning, for a debtor to convert non-exempt assets into those which are exempt, even on the eve of bankruptcy,[4] the Court also recognizes that under 11 U.S.C. § 548(a) the same transfer[5] may be avoided if: (1) the transfer occurred on or within one year of the filing of the petition, the debtor received less than a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time of the transfer or was rendered insolvent thereby; or (2) the transfer made within the time period set forth above was made with the actual intent to hinder, delay or defraud creditors.[6] "The rationale for

---

**2.** Mass.Gen.Laws ch. 209 § 1 provides as follows:

> "A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.
>
> The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is *the principal residence of the nondebtor spouse;* provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family."

**3.** § 522(b)(2)(B) provides, in relevant part: "an individual debtor may exempt from property of the estate ... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law."

**4.** *See, e.g., In re Jackson,* 472 F.2d 589, 590 (9th Cir.1973) ("purposeful conversion of non-exempt assets into exempt assets immediately prior to bankruptcy is not fraudulent per se"); *In re*

*Adlman,* 541 F.2d 999 (2d Cir.1976); *In re Ford,* 3 B.R. 559, 577, 6 B.C.D. 202, 212 (Bkrtcy.D.Md. 1980), *aff'd mem.,* 638 F.2d 14 (4th Cir.1981) ("eleventh hour [conversion] is not fraudulent as to creditors absent more than the act itself ..."); see also 3 Collier on Bankruptcy ¶ 522.08 at 522-36 *et seq.* (15th ed. 1982) and Resnick, Prudent Planning or Fraudulent Transfer?, 85 Comm.L.J. 238 (1980). These authorities find support in the legislative history. "The historical purpose of ... exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his non-exempt property, the debtor will not be left destitute and a public charge." H.R.Rep. 595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6087. "The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions for which he is entitled under the law." *Id.* at 361, U.S.Code Cong. & Admin.News 1978 at 6317.

**5.** Under 11 U.S.C. § 101(41), "transfer" is defined as: "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest."

**6.** 11 U.S.C. § 548(a) provides, in relevant part:

avoiding prepetition transfers under Code § 548 ... is to preserve assets of the estate". *In re Jamison*, 21 B.R. 380, 381–82 (Bkrtcy.D.Conn.1982).

The Trustee seeks to avoid the transfer relying on both § 548(a)(1) and (2). In paragraph 5 of the complaint, the Trustee alleges that transfer was made within one year of the filing of the Chapter 7 petition, with the intent to hinder, delay and defraud creditors, in exchange for a less than reasonably equivalent value and at which time the debtor was insolvent or became insolvent as a result of the transfer. The debtor answered paragraph 5 as follows: "The [d]efendants admit that they conveyed their interest in said real estate to themselves, in order to create a new tenancy by entirety, but deny that the transfer was made with the intent to hinder, delay, and defraud creditors, and that the [d]ebtor received less than a reasonably equivalent value in exchange. The [d]efendants deny that the transfer was fraudlent, within the meaning of 11 U.S.C. [§] 548." In substance, the debtor argues that summary judgment in his favor is appropriate because the only effect of the transfers was to enable the debtor to avail himself of a state exemption when he filed his Chapter 7 petition. The trustee's cross-motion requests the Court to deny the debtor's motion and states there is no question as to any material facts, therefore he is entitled to judgment as a matter of law.

 § 548(a)(1) requires a finding of actual fraudulent intent, a purely factual question. 4 Collier on Bankruptcy, ¶ 548.02 (15th ed. 1982). From the uncontroverted facts which were presented, I am unable to determine whether the debtor actually intended to defraud his creditors. I have already stated that an exchange of non-

exempt property for exempt property is not fraudulent per se. *See supra,* note 3. Likewise, a transfer of property to a family member, without more, is not necessarily fraudulent. *See, e.g., Chichester v. Golden,* 204 F.Supp. 634 (S.D.Cal.1962), *aff'd in part, modified in part,* and *rev'd in part,* 321 F.2d 250 (9th Cir.1963) and *In re Kaiser,* 32 B.R. 701 (S.D.N.Y.1983). *See also Friedman v. Harold, supra* at 263, note 2 ("no showing of fraud [where] the exemption ... [results] ... from the bankrupt's choice in holding the property as a tenant by the entirety rather than in some other manner").

However, since § 548(a) is phrased in the disjunctive, a transfer may be avoided if the factors set forth in § 548(a)(2) are shown to have existed. Under this subsection, the intent of the debtor is immaterial; this section imposes a constructive fraud standard. *In re Roco Corp.,* 701 F.2d 978 (1st Cir.1983). Where the above criteria are satisfied, a conclusive presumption of fraud arises. *See In re Nance,* 26 B.R. 105 (Bkrtcy.S.D.Ohio 1982) and *In re Missionary Baptist Foundation of America,* 24 B.R. 973 (Bkrtcy.N.D.Tex.1982).

In *In re Wheeler,* 17 B.R. 85 (Bkrtcy.S.D. Ohio 1981), the husband assigned an undivided one-half interest in his federal and state income tax refunds to his wife in order to provide her with the opportunity to exempt the refunds from her estate. The court found that since the husband was insolvent at the time of the transfer, and he received nothing of value in return, the transfer was voidable under § 548(a)(2). "[T]he rule condoning property conversion from non-exempt to exempt property is inapplicable if the elements of a fraudulent conveyance are determined to exist ..." *Id.* at 89. *See also In re White,* 28 B.R. 240, 10 B.C.D. 519 (Bkrtcy.E.D.Va.1983).

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
 (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such trans-

fer occurred or such obligation was incurred, indebted; or
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ...

■ Rule 56 of the Federal Rules of Civil Procedure[7] (made applicable to this adversary proceeding by Bankruptcy Rule 7056) allows a court, in its discretion, to dispose of a case before trial, where there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Once the movant establishes the lack of any genuine issue of fact, viewing the facts in the opponent's favor, the opponent must introduce contradictory facts to defeat the motion. Fed.R.Civ.P. 56(e). "In passing upon ... cross motions for summary judgment, the averments of the complaint must be accepted as facts." *Iversen v. United States*, 63 F.Supp. 1001, 1006 (D.D.C.), *aff'd*, 327 U.S. 767, 66 S.Ct. 825, 90 L.Ed. 998, *reh'g denied*, 327 U.S. 819, 66 S.Ct. 963, 90 L.Ed. 1041 (1946). *See also Furton v. City of Menasha*, 149 F.2d 945 (7th Cir.), *cert. denied*, 326 U.S. 771, 66 S.Ct. 176, 90 L.Ed. 466 (1945). The prevailing rule is that even where cross-motions for summary judgment are filed, it is incumbent upon a court to determine that no material facts are in dispute. The mere filing of cross-motions for summary judgment does not entitle one of the moving parties to summary judgment as a matter of law. *See, e.g., Schwabenbauer v. Board of Education*, 667 F.2d 305 (2d Cir.1981); *Joplin v. Bias*, 631 F.2d 1235 (5th Cir. 1980); *Eby v. Reb Realty, Inc.*, 495 F.2d 646 (9th Cir.1974); and J. Moore, 6 Moore's Federal Practice, ¶ 56.13 (1982).

■ The defendants do not dispute and the Court finds, that the transfer was made within the applicable time period. Furthermore, since the debtor did not receive anything in return for the transfer the Court finds the transfer was made for a less than reasonably equivalent value.[8] *See In re White supra* and *In re Wheeler, supra.* While it is true that these cases involved a transfer by one party to a second party who had no interest in the property transferred prior to the transfer, the Court finds these cases controlling. Here, the debtor gave up substantial rights in the property by the transfer and received nothing of value in return. *Compare In re Gray*, 704 F.2d 709 (4th Cir.1983); *In re Jamison, supra;* and *In re Hulk*, 8 B.R. 444, 7 B.C.D. 339 (Bkrtcy.D.Conn.1981). It must be held the transfer was for a less than reasonably equivalent value.

Therefore, the only question remaining is that of the insolvency of the debtor. The defendants did not allege that the debtor was solvent at the time the transfer was made or was not rendered insolvent there-

---

7. Rule 56 provides, in relevant part:

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) Motion or Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

. . . . .

(e) When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

. . . . .

8. § 548(d)(2)(A) provides: In this section—"value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; ...

by; they further failed to deny same. As set forth above, under the standards for granting summary judgment motion, this they were required to do. *See First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). Accordingly, the Court finds that since the defendants failed to allege that a dispute as to a material fact exists, summary judgment on the question of insolvency of the debtor is appropriate. *See In re Richardson*, 23 B.R. 434, 9 B.C.D. 895 (Bkrtcy.D.Utah 1982). *Cf. United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) and *Klein v. Tabatchnick*, 610 F.2d 1043 (2d Cir.1979).[9]

### ORDER

Accordingly, the cross-motion of the Trustee for summary judgment is GRANTED. The defendant's motion for summary judgment is DENIED.

SO ORDERED.

---

**9.** Even if the defendants had successfully met the burden imposed by Rule 56(e), the First Circuit has repeatedly approved the use of retrojection to prove insolvency at the time in question where it can be shown that no substantial changes in the asset and liability structure of the debtor have occurred between the two relevant dates. *See, e.g., Branustein v. Massachusetts Bank & Trust Co.*, 443 F.2d 1281 (1st Cir. 1971); *Hassan v. Middlesex County National Bank*, 333 F.2d 838 (1st Cir.), *cert. denied*, 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964); *J. Ochoa & Hermano v. Perez Blanco*, 15 F.2d 618 (1st Cir.1926); *In re Arrowhead Gardens, Inc.*, 32 B.R. 296 (Bkrtcy.D.Mass.1983); *In re Morton Shoe Companies*, 24 B.R. 1003 (Bkrtcy.D.Mass. 1982); and *In re Hause*, 13 B.R. 75, *aff'd on other grounds*, 694 F.2d 861 (1st Cir.1982) (Bkrtcy.D.Mass.1981). *See also Haynes & Hubbard, Inc. v. Stewart*, 387 F.2d 906 (5th Cir.1967) and *In re Randall Construction, Inc.*, 20 B.R. 179 (D.C.N.D.Ohio 1981). The debtor's (unsworn) schedules and statement of affairs show the debtor to be insolvent; as defined by 11 U.S.C. § 102(26), at the time the petition was filed; less than three months after the transfer in question. Furthermore, the scheduled debts incurred in *1979* (or prior thereto), show that the debtor was insolvent (as defined above) for at least some part of the year prior to the year of the transfer which is sought to be avoided, having debts of approximately $129,000. In 1980, the debtor incurred debts of approximately $28,-000. All assets were claimed exempt. *See In re Nance, supra.* Since "the court is duty bound to take judicial notice of its own records", *In re Ponn Realty Trust*, 4 B.R. 226, 228 n. 2 (Bkrtcy. D.Mass.1980), this Court might otherwise have been in the position to find for the Trustee on the issue of insolvency if it were shown that within the relevant time period, the circumstances had not changed. I use "might" to save for the appropriate time the determination of whether the Court may take judicial notice of papers on file to resolve the issue of *insolvency. In re Phippens*, 4 B.R. 155 (Bkrtcy.M.D.Tenn. 1980) answers this question in the negative. *But see generally In Re Saco Local Development Corp.*, 30 B.R. 862 (Bkrtcy.D.Me.1983). *See also In re Leach*, 35 B.R. 100 (Bkrtcy.W.D.Ky.1983).