**In re Myron SNYDER, Debtor.**

**Bankruptcy No. 84–1470–L.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 30, 1986.

Charles R. Dougherty, Hill & Barlow, Boston, Mass., for SAMPCO.

John D. Mullen, Sheridan, Garrahan and Lander, Framingham, Mass., for Framingham Trust Co.

Glenn D. Barnes, Erlich & Gochros, Boston, Mass., for defendants, Inez T. Snyder.

Myron Snyder, pro se.

Richard G. Kagan, J. Christopher Robinson, Sullivan & Worcester, Boston, Mass., for trustee.

## MEMORANDUM ON FRAUDULENT CONVEYANCE

HAROLD LAVIEN, Chief Judge.

The controversy before the Court is an adversary proceeding brought by the plaintiff, Sampco Incorporated against the debtor, Myron Snyder, his wife, Inez Snyder, Richard G. Kagan, who is the Court-appointed trustee in bankruptcy, and the Framingham Trust Company. All of the defendants have submitted answers, in addition, Inez Snyder has submitted three memoranda and the plaintiff, a post-trial memorandum. On August 22, 1986, the Court requested clarification as to the possible consequences of the three-year delay between the plaintiff's levy and the sale of the property. Both Sampco and Mrs. Snyder submitted briefs. A trial was held in this matter on May 16, 1986, at which time Sampco prosecuted its claim, Myron Snyder proceeded pro se, an attorney representing Inez Snyder examined witnesses on her behalf, an attorney from the Framingham Trust Company attended the trial and, although he did not examine any of the witnesses, he reserved his right to respond to the memorandum submitted by counsel for Sampco and Inez Snyder. No such response was filed. The trustee was not represented.

I make the following findings of fact. On January 10, 1980, the plaintiff commenced suit against G. Ropate Corporation, a company then controlled by the debtor, and the debtor, individually, in Suffolk Superior Court in order to collect approximately $160,000 owed the plaintiff by G. Ropate, Inc. and personally guaranteed by the debtor. A trial was held, and on November 20, 1980, the Court entered judgment for the plaintiff. On November 24, 1980, Sampco filed a post-judgment motion for real estate attachment on property known as 156 Dean Road, Brookline, Massachusetts, and the motion was set for hearing on December 4th. The property in question had been conveyed to the debtor and his wife, Inez Snyder, as tenants-by-the-entirety, on September 15, 1960. On December 3, 1980, the debtor and his wife, as tenants-by-the-entirety, conveyed title to the property to their daughter, Geanne R. Snyder, in consideration of one dollar and love and affection. On the same day, Geanne R. Snyder conveyed the property back to her parents as tenants-by-the-entirety, again, for the value of one dollar and love and affection. The next day, December 4, 1980, the motion by Sampco for attachment of this property was allowed and, on December 5th, Sampco recorded the Writ of Attachment. The Writ of Attachment was executed and recorded by a bonded constable under the authority of a motion by Sampco for Special Appointment to Serve Process which had been allowed by the Suffolk Superior Court on June 10, 1979. A series of appeals by the debtor ensued up to the Supreme Judicial Court

where, on June 8, 1982, the Court denied the debtor's application for further appellate review. Thereafter, the Appeals Court entered final judgment for the plaintiff in the amount of $154,916.00, plus interest.

Execution issued on June 13, 1982 in the amount of $199,858.03, with interest, to run from the date of issuance to the execution. On June 10, 1982, the Framingham Trust Company granted a mortgage to the debtor and his wife on the Dean Road property. This mortgage was recorded on June 21, 1982. On July 9, 1982, the Deputy Sheriff of Norfolk County levied an Execution on the Dean Road property. At this time, there were four liens on the Dean Road property superior in right to the plaintiff's original attachment, with an aggregate value of $400,000.

At trial, the parties agreed upon the following outline of the essential dates:

6/10/—Motion to Appoint Special Process Server, allowed.

11/24/80—Motion to Attach, filed.

12/3/80—Transfer of Property from the debtor and Inez Snyder to Geanne Snyder, and then back again.

12/4/80—Motion to Attach Dean Road property, allowed.

12/5/80—Attachment recorded.

6/21/82—Mortgage to Framingham Trust Company.

7/9/82—Dean Road property levied upon.

On November 17, 1984, the debtor filed a Voluntary Chapter 7 pursuant to 11 U.S.C. § 301. Richard G. Kagan, Esquire, a defendant in this action, was appointed trustee pursuant to 11 U.S.C. § 701. On June 3, 1985, Mr. Kagan gave notice of the intended private sale of the Dean Road property. No objections were filed as of the deadline for submitting objections, and it should be noted that none of the parties in this action have raised an objection to the sale as it was to be held. Two counter-offers were submitted to the Court and the property was sold, pursuant to a Court order, for $535,100.

## ISSUES

The plaintiff alleges the following: (1) The conveyance by the debtor and his wife, on December 3, 1980, was not for fair consideration and rendered the debtor insolvent, if the debtor was not already insolvent, within the meaning of M.G.L. c. 109A, § 1, and, therefore, was a fraudulent conveyance pursuant to M.G.L. c. 109A § 4; (2) The December 3 conveyance was made with the actual intent to hinder, delay and defraud both present and future creditors of the debtor and Inez Snyder, and should be set aside pursuant to M.G.L. c. 109A § 7; (3) The debtor's share of the proceeds from the sale of the property should be paid to Sampco, subject to any exemption to which the debtor is entitled.

The debtor has not submitted any formal pleadings to the Court in this proceeding, however, at trial he made an oral statement to the Court. He stated that the conveyance by his wife and himself to his daughter and back again, was made without any intent of defrauding his creditors. Rather, the conveyance was made on the advice of counsel in order to protect his wife's position as a woman. Mr. Snyder acknowledged that the attorney who he employed on this matter and whose advice he acted on was the same attorney who was defending him in the state court suit by Sampco.

Inez Snyder, in her pleadings, raises the following contentions: (1) she contends that the attachment of the property is void because it was made by a constable whose jurisdictional authority is limited and does not include attachment. Mrs. Snyder asserts that the Court order allowing the attachment only authorizes a sheriff or deputy to effectuate the attachment, as did the statute of 1795, c. 41 § 3 and the present Mass.R.Civ.P.Rl. 4.1(c); (2) she argues that in any event, the transfer to her daughter and back again was not fraudulent because it was done with the intention of acknowledging her equality to her husband in compensation for work in his business.

Neither of the other two defendants in this action, Framingham Trust Company

nor the trustee, Richard G. Kagan, challenge Sampco's position in this proceeding.

## VALIDITY OF THE ATTACHMENT

■ The first issue to be addressed in this matter is the contention by Mrs. Snyder that Sampco's attachment of December 4, 1980 is invalid because it was made by a constable, Suvalle, Jodrey & Associates, rather than a sheriff. On June 10, 1979, the Suffolk Superior Court allowed a motion by Sampco authorizing them to use the above named constables to serve process in their suit against G. Ropate Corp. and Myron Snyder. Presumably, Sampco intended to act under the umbrella of the June 10th Order, when they used this same constable service on December 5th to serve the attachment. However, the June 10th motion was specifically limited in its request for special appointment to serve process pursuant to Mass.R.Civ.P.Rl. 4(c). Rule 4(c) addresses the limited question of who can serve process of a summons and allows for the appointment of a specially appointed process service. Service of an attachment is not made pursuant to Rule 4(c) but, rather, Rule 4.1(c) which states that an officer is to serve an attachment. According to Rule 4.1(b), a writ of attachment should be addressed to "the sheriffs of the several counties or their deputies, or any other person duly authorized by law." The Writ of Attachment issued in this case is addressed "To the Sheriffs of our several counties or their deputies."

■ The defendant, Inez Snyder, contends that the December 4th attachment is invalid because it was made by an unauthorized individual acting without jurisdictional authority. The plaintiff responds that this assertion is meritless form over substance and the defendant was not prejudiced by a constable serving the writ. Although there is a certain appeal to the plaintiff's position, it fails in that if adopted, a substantial portion of the judicial system's procedural rules would be rendered meaningless. For example, there is really no substantive reason for the ten-day deadline for appeals, as opposed to an eleven or twelve-day deadline, yet, as our rules provide, unless an appeal is taken within 10 days after a final Court order is issued, it is forever barred. Within the context of our judicial system, the distinction of service by a sheriff who has been granted statutory and judicial authority, as opposed to a constable who has been granted neither, cannot be dismissed as mere form over substance.

The powers conferred on a sheriff are greater than those of a constable and unless specifically authorized, the latter is without jurisdictional authority necessary to serve a Writ of Attachment in a real property action. As stated in Corpus Juris Secundum Vol. 80 §§ 1 and 3.

> The sheriff ordinarily is an elective public officer and chief executive officer in his county, and is an officer of the court and subject to its orders and directions.... Generally, a constable is an officer of a municipal corporation, usually elected, whose duties are similar to those of a sheriff, although his powers are less and his jurisdiction smaller.

The court in *Hart v. Huckins*, 5 Mass.Rep. 260 (1809) considered the question of whether service by a constable of a writ in a real property action was valid. The court found that the defendant in the case had been improperly served because of the use of a constable rather than a sheriff and, therefore, he had not been given legal notice of the suit. *Also, see Lewis v. Norton*, 164 Mass. 209, 41 N.E. 290 (1895) wherein the court found that service by a constable was invalid outside of a town in which he was elected. In the matter before the Court, determining that the attachment was invalidly made, does not resolve the question of whether it will now be recognized as valid.

■ It would be inequitable at this late date for this Court to determine the attachment ineffective. The debtor and Mrs. Snyder have both known of the attachment for nearly five-and-a-half years and have not objected to service of the attachment

until this proceeding.[1] Sampco has relied on the validity of its attachment since its service in December of 1980 and, because there has been no objection, has had no reason to correct the recently cited defect. The debtor and Mrs. Snyder were represented by counsel at the time of the attachment and have had ample opportunity to object to it as invalid. Had the debtor and Mrs. Snyder timely objected, Sampco would have had an opportunity to correct the faulty service prior to the commencement of these bankruptcy proceedings. At this time, because of these bankruptcy proceedings, Sampco would be unable to correct its attachment and would clearly be prejudiced by a finding in this Court that its service was invalid. Rather than holding a secured position in these bankruptcy proceedings, Sampco would be forced to accept the same pro-rata distribution that the unsecured creditors will receive. The case of *Quaranto v. Silverman*, 345 Mass. 423, 187 N.E.2d 859 (1963) involved a claim by the husband of the debtor that an attachment was an abuse of process because it was for too great an amount of money and incorrectly attached his interest in the property. The court stated, at 428, 187 N.E.2d 859:

> If the attachment of the husband's interest would conceivably have injured him in some way apart from the attachment of his wife's interest, he could have applied for a discharge of the attachment as it related to his interest. G.L. c. 223 § 114. The husband's case stands no stronger by reason of the length of time the attachment was in effect. The damage claimed by the husband extended over a two year period but with the remedy of discharge readily available, he could not disregard this remedy and allow damages to mount; a party claiming

injury by a tort has a duty to use reasonable means to minimize his damages. Similarly, the court in *McClusky v. Galland*, 95 Idaho 472, 511 P.2d 289 (Supreme Court 1973) found the motion of the defendant to dissolve or discharge the writ of attachment untimely, and any irregularities waived because the defendant had failed to timely object. It should be noted that in *Hart v. Huckins*, at 261, the court, in invalidating the attachment, pointed out that the defendant was not guilty of laches. Also, on the subject of estoppel by silence, *see* *Sperry Rand Corp. v. Hill*, 356 F.2d 181, 186 (1st Cir.1966); *United States v. S.F. Scott & Sons, Inc.*, 69 F.2d 728, 732 (1st Cir.1934); and *Moss v. Old Colony Trust Co.*, 246 Mass. 139, 151, 140 N.E. 803 (1923).

Equity will not allow the debtor and Mrs. Snyder to benefit from their silence. To the best of the Court's knowledge, the Snyders have never made an effort to have the attachment discharged. The Snyders benefitted from the attachment in that, other than the Framingham Trust mortgage, other creditors of Mr. Snyder did not attempt an attachment, cognizant of what they assumed the prior position of Sampco to be. In light of the four-and-a-half years that have passed since the attachment was served, the debtor and Mrs. Snyder have lost their objections and must live with what they failed to timely object to.

■ In any event, the assertion by Mrs. Snyder that the attachment of the property was invalid and therefore void is substantially moot because of the properly executed levy and suspension of July 9, 1982. The only party who could be potentially harmed by the faulty attachment is the Framingham Trust Company who held a duly recorded security interest in the Dean

---

1. The problem of laches is only being considered in relation to the debtor and Mrs. Snyder. Neither the trustee nor Framingham Trust Co. have objected to the validity of the plaintiff's attachment. The trustee and Framingham Trust Company, in their respective answers to plaintiff's complaint, neither admitted nor denied the plaintiff's superior rights to the proceeds received from the sale of the Dean Road property. Since the filing of their answers, neither party has submitted any pleading in this action. Under the circumstances, the Court must understand that the trustee and the Framingham Trust Company are not objecting to the plaintiff's claim to a position superior in right than their own, to the proceeds from the sale of the Dean Road property.

Road property, granted as of June 10, 1982 which was after the attachment but prior to the levy. As has previously been noted, Framingham Trust Company has not pursued a position adverse to the plaintiffs.

## FRAUDULENT CONVEYANCE

■ The next issue to be considered is whether the conveyance of the Dean Street property of December 3rd by the debtor and Mrs. Snyder to their daughter, Geanne Snyder, and back to them, was a fraudulent conveyance. The result of the series of December 3rd conveyances was to transform the ownership of the property from a common law to a statutory tenancy-by-the-entirety. Under the common law tenancy-by-the-entirety, although the husband and wife shared an indefeasible survivorship right in the tenancy, the other rights the husband held in the property were greater than his wife's. Some examples of rights in the property the husband possessed, but not his wife, are the following: right to the rents and profits; right to alienate his interest; and, most important, in the matter before the Court, the husband's creditors could attach and sell the property, subject to the wife's survivorship interest. *Licker v. Gluskin,* 265 Mass. 403, 164 N.E. 613 (1929). Statutory revisions, Mass.Gen. Laws ch. 209 § 1, effective February 11, 1980 altered the tenancy-by-the-entirety law so as to allow the wife to share in all of the rights in the property that had formerly only been enjoyed by her husband. The most important change resulting from the statutory revisions are that creditors of only one spouse may not reach the property if the property is the principal residence of the non-debtor spouse. *See In re Oliver,* 38 B.R. 407 (D.Mass.1984); Lavien and Mencher, *The Eclipse of Massachusetts Tenancy by the Entirety and a Reappraisal of Homestead as they Relate to Bankruptcy,* Vol. 61 Mass.L.R. 170 (1982).

The effect of these statutory revisions on the matter before the Court, is that after the series of December 3rd conveyances, the plaintiff who is solely a creditor of Myron Snyder would be forestalled from attaching the Dean Road property because it was the principal residence of Inez Snyder.

The plaintiff contends that the December 3rd conveyances were fraudulent under Mass.Gen.Laws. Ch. 109A §§ 4 & 7.[2] The difference between the two sections is that § 4 looks to the financial condition of a debtor and § 7 looks to his intent. The plaintiff contends that the transfer would be found fraudulent under either test.

The Court will first consider whether the conveyance of December 3rd was fraudulent under Mass.Gen.Laws Ch. 109A § 4. Insolvency is defined in Section 2(1) of Chapter 109A:

· A person is insolvent within the meaning of this chapter when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

The following is a tabulation of Myron Snyder's assets and liabilities on December 3rd as presented by the plaintiff at trial and in a post-trial brief:

| | | |
|---|---|---|
| Assets | | |
| Cash | $ | 10 |
| Savings Account | | 10 |
| Securities/Partnership Interests | | |
| Oil well stock | | 15,000 |
| Cape Cod Investors | | 30,000 |
| Harvard Office Building | | 0 |
| Real Estate | | |
| West Yarmouth Condominium Unit | | 65,000 |
| 156 Dean Road (the "Property") | | 500,000 |
| | $ | 610,020 |
| Liabilities | | |
| Secured | | |
| Homeowners (Dean Road Mortgage) | $ | 6,500 |
| Atlas Capital (Dean Road Mortgage) | | 38,000 |
| Widett & Widett (Dean Road Mortgage) | | 68,000 |

**2.** § 4. Every conveyance made and obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

§ 7. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

| Liabilities | | |
|---|---|---|
| Secured | | |
| Homeowners (West Yarmouth Mortgage) | $ | 22,000 |
| Zuroff & Paglia (West Yarmouth Mtge) | | 18,000 |
| Unsecured | | |
| 1979 Federal Income Taxes | | 6,000 |
| 1979 State Income Taxes | | 35,000 |
| Hale & Dorr | | 4,000 |
| Sampco, Inc. | | 170,000 |
| | $ | 367,500 |

Thus, just prior to the December 3 conveyance, the debtor had gross assets which he valued at trial at $610,020 and liabilities which he valued at trial at $367,500. Of his purported $610,020 in assets, $500,000 of that constitutes the value as of 1980 now placed by the debtor on the Dean Road property.[3]

At trial, Mr. Snyder attempted to persuade the Court that the above balance sheet inadequately represents his finances on December 3rd. However, each contention made by Mr. Snyder was rebuffed by the plaintiff who presented contrary testimony given by Mr. Snyder, under oath, at a previous examination. Accordingly, if the value of the Dean Road property is deducted from Mr. Snyder's assets, he is rendered insolvent.

For a finding of a fraudulent conveyance under Mass.Gen.Laws Ch. 109A § 4, the debtor must not only be insolvent before, or as a result of the conveyance, but the conveyance must be for less than an equivalent value. Mrs. Snyder raises two points in regard to this issue and it seems that Mr. Snyder joins with her: (1) no transfer actually transpired by the December 4th conveyances, merely a change from a common law tenancy-by-the-entirety to one held pursuant to statute; (2) Mrs. Snyder gave reasonable equivalent value for her additional rights by performing her wifely duties and/or her participating in her husband's business. None of these contentions are supported by the applicable case law.

■ The conveyance which took place on December 3rd was clearly a transfer. The rights in the property were conveyed from Mr. and Mrs. Snyder to their daughter and then back, again. The court in *In re Oliver*, 44 B.R. 989 (D.C.Mass.1984) found that a conveyance such as made by the Snyders, was a transfer. Although Mrs. Snyder contends that this conveyance was only made in order to bring the Snyders' tenancy-by-the-entirety within the legislative intent of the revised applicable statute, this is clearly an incorrect analysis. The court in *Oliver* considered this argument and rejected it as failing to account for the considerable rights the husband was forfeiting. Had the legislature intended the change of already existing common law tenancy-by-the-entirety to automatically operate under the revised laws, the statute would have been constructed accordingly, *Turner v. Greenanaway*, 391 Mass. 1002, 459 N.E.2d 821 (1984) and cases cited therein. The statute does not allow for this, rather the appropriate procedure used to make the transformation of the common law tenancy-by-the-entirety to one controlled by the revised statute requires a transfer of property interest. In *Oliver*, the court found the transfer to be fraudulent pursuant to 11 U.S.C. § 548(a)(2)(A).

■ Mrs. Snyder's final contentions are that the value received by the debtor in exchange for the enlarged property interest of Mrs. Snyder was her dutiful devotion to her husband and her participation in her husband's business which was intended to increase after the conveyance. Although love and affection has been recognized as valuable consideration for transfers such as took place in this case, it is left to the

---

**3.** Of course, attributing the full purported value of the property to the debtor alone disregards his wife's interest in the property who held a right of survivorship prior to the transfer. In all actuality, even prior to the transfer, the debtor's interest in the property was substantially less than fifty percent of the property's value, because its potential for sale was greatly reduced by Mrs. Snyder's survivorship rights. Therefore, there is a good chance that the debtor was insolvent even prior to the transfer but, in any event, was clearly insolvent after the transfer. Eliminating the $500,000 value attributed to the Dean Road property from the assets held by the debtor as of December 3rd, he is left with $110,000 in assets and $367,500 in liabilities.

Court's discretion on considering all of the surrounding circumstances to determine the actual purpose of the transfer. *Newton Mortgage Corp. v. Nissen,* 280 Mass. 267, 182 N.E. 366 (1932); *Don v. Tracy,* 248 Mass. 201, 142 N.E. 781 (1924). Under the circumstances of the impending attachment by Sampco, this Court finds it hard to believe that Mr. Snyder's sole intent in making the transfer was to compensate his wife for her devotion. It is hard to believe that Mr. Snyder would choose a time of impending insolvency to recognize his wife's devotion.

Mrs. Snyder also alleges that the transfer was made in consideration for the value the debtor received from Mrs. Snyder's participation in his business with an eye to increasing her involvement. This court held and was affirmed in *In re Hause,* 13 B.R. 75, 79 (1981), 694 F.2d 861 (1st Cir. 1982) in its holding that for an obligation "to be categorized as an antecedent debt, it must, under the Section 1 definition of debt, be a 'legal liability' of some kind. A 'moral obligation' does not 'give rise to legal liabilities, absolute, fixed or contingent.'" *O'Sullivan v. Donahue,* 14 F.Supp. 605, 607 (D.Mass.1936). As was determined in *In re Hause,* although Mrs. Snyder may not have been adequately compensated for her participation in her husband's business, the debtor was under no legal obligation to make up the difference. Further, the Court finds unacceptable Mrs. Snyder's contention that the transfer was in consideration of future services she and her husband had agreed she would render to the business. It is especially hard to believe that payments were being made for future debts not yet incurred when the debtor was unable to meet his present obligations.

The transfer of December 3, 1980 is void as a fraudulent conveyance. Therefore, the attachment and division of the sale proceeds is to be viewed as if Mr. and Mrs. Snyder still held the property as pre-February 11, 1980 tenancy-by-the-entirety.

Sampco has a valid lien on Mr. Snyder's interest in the property. The debtor has no right to an exemption in such property because of his voluntary conveyance, 11 U.S.C. § 522(g)(1)(A).

There remains open the valuation of Mr. Snyder's interest in this property under the earlier tenancy-by-the-entirety.