In re William J. JAMISON, Debtor.

Daniel MEISTER, Trustee, Plaintiff,

v.

Kevin M. JAMISON, Defendant.

Bankruptcy No. 205-5-81-00118.
Adv. No. 205-5-82-0018.

United States Bankruptcy Court,
D. Connecticut.

July 7, 1982.

Daniel Meister, Norwalk, Conn., for plaintiff.

Joseph J. Milositz, Jr., Chaplowe & Chaplowe, Stratford, Conn., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO AVOID FRAUDULENT TRANSFER

### (11 U.S.C. § 548(a)(2))

ALAN H. W. SHIFF, Bankruptcy Judge.

This matter comes before the court on the complaint of the trustee to avoid an

alleged fraudulent transfer to the defendant pursuant to 11 U.S.C. § 548(a)(2)(A), (B)(i).

## FACTS

The parties stipulated to the following facts:

"1. William J. Jamison (Debtor) executed a promissory note in favor of the Capital District Telephone Employees Federal Credit Union in the amount of $8,000.00 in December, 1977.

2. The proceeds of said loan were used to purchase a 1978 Chevrolet pick-up truck which was registered in the name of the Debtor's son, Kevin Jamison, subject to a security lien in favor of the Capital District Telephone Employees Federal Credit Union.

3. The Debtor made monthly installment payments of $210.64/month to the Capital District Telephone Employees Federal Credit Union by direct payroll deductions beginning on or about January 15, 1978 and continuing until the Debtor's filing of a Petition for Bankruptcy on February 6, 1981.

4. This Note to the Capital District Telephone Employees Federal Credit Union was a scheduled debt on the Debtor's Petition for Bankruptcy and has been duly discharged.

5. The lien on the truck that is registered to the son has been decreased by the amount of payments made by the debtor father.

6. The Debtor was insolvent at all times hereunder."

## DISCUSSION

In relevant part, Code § 548 provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

Under the stipulated facts, the debtor, while insolvent, transferred property within one year of the date of the filing of his petition. Thus, the only element of the trustee's action in dispute is whether the debtor received "less than a reasonably equivalent value in exchange" for the transfer.

The trustee concedes, as he must, that the transfer to the credit union was for reasonably equivalent value since each payment reduced the debtor's indebtedness. 11 U.S.C. § 548(d)(2)(A)[1]. The trustee further concedes that if the credit union had not previously obtained a lien on the vehicle registered to the debtor's son, he would not claim that the transfer was a fraudulent transfer within the meaning of Code Section 548. The trustee argues, however, that the debtor's payments to the credit union increased the equity in his son's vehicle for which the debtor received no consideration and therefore such payments constitute a fraudulent transfer. In essence the trustee has changed the focus of the issue in this controversy by claiming that the payments by the debtor to the credit union were a transfer to both the credit union and to the debtor's son.

The trustee's argument is not persuasive. Even though a transfer of property, e.g. money, incidentally benefits another, it cannot be said as a matter of law or logic that the transaction was a fraudulent transfer as to the party benefited.

The rationale for avoiding prepetition transfers under Code § 548, "which in large part is derived from section 67d of the

1. 11 U.S.C. § 548(d)(2)(A) provides: "In this section 'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."

Bankruptcy Act"[2] is to preserve assets of the estate. Therefore, analysis of an allegedly fraudulent transfer must be directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost. *See also Rubin v. Manufacturer Hanover Trust Co.*, 661 F.2d 979, 992 (2d Cir. 1981) (in discussing the Bankruptcy Act's "fair consideration"[3] requirement in the context of three-sided transactions, the court emphasized the "net effect of the transaction on the debtor's estate").

In this instance, the debtor made payments to the credit union to which he owed money on a loan. There was no depletion of the debtor's estate since each payment was matched by an equivalent reduction in the *debtor's* debt. Although the debtor's son may have received some benefit from the payments to the credit union, it was not at the expense of the estate. Indeed, if the son has to pay the trustee the amount that the debtor paid the credit union within one year of the petition, as the trustee urges, the estate would not only have the benefit of those funds but the reduction in the debtor's obligation to the credit union as well, which would hardly be an equitable result.

Furthermore, since the lien on the son's vehicle could only be enforced if the debtor defaulted, the son was, in a sense, a guarantor or surety of the debtor's obligation. Under the trustee's view of Code Section 548, a surety could be called upon to pay the trustee the amount of prepetition payments the debtor made to the debtor's obligee on the theory that the surety's obligation was diminished by each such payment. In other words, a surety would have to make payments even though the principal had made equivalent payments during the year prior to the principal's filing a petition for relief under the Code. Such a prospect might chill potential surety arrangements and curtail transactions which could not be accomplished without them.

The trustee, without specific citation, observed that under the Act transfers such as the one here were regularly deemed fraudulent. It is true that under the Act the bankrupt could have reduced his antecedent indebtedness and nevertheless have failed to receive "fair" consideration sufficient for the transfer to withstand attack under Act § 67d. *See, e.g., Bullard v. Aluminum Co. of America*, 468 F.2d 11 (7th Cir. 1972). This result was possible because "good faith" was an element of "fair" consideration. Act § 67d(1)(e); *Cohen v. Sutherland*, 257 F.2d 737, 742 (2d Cir. 1958). In this proceeding, however, there is no indication of a lack of good faith. Moreover, under the Code, there need only be "reasonably equivalent value" exchanged for the property transferred by the debtor, *see* Code § 548(a)(2)(A), (d)(2)(A), which, as noted above, was done here.

### ORDER

It is accordingly ORDERED that judgment may enter in favor of the defendant.

---

**2.** S.Rep. No. 989, 95th Cong., 2d Sess. 89 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 5875.

**3.** Act § 67d(1)(e) provides: "consideration given for the property or obligation of a debtor is "fair" (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."