IN RE: Marshall CHESROWN, Debtor.

Nicole Testa Medhipour, Plaintiff,

v.

Jeannine McLaughlin, Defendant.

CASE NO.: 13–21344–BKC–PGH

ADV. NO.: 15–1341–BKC–PGH–A

United States Bankruptcy Court, S.D. Florida, **West Palm Beach Division.**

Signed July 28, 2015

Filed July 29, 2015

---

18. *See* Fed. R. Bankr. P. 4004(b)(1).

Barry P. Gruher, Fort Lauderdale, FL, for Plaintiff.

Patrick R. Dorsey, Bradley S. Shrai-berg, Boca Raton, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Paul G. Hyman, Jr., Chief United States Bankruptcy Judge

**THIS MATTER** came before the Court for hearing on June 29, 2015, upon the *Motion to Dismiss* (the "Motion to Dismiss") (ECF No. 7) filed by Jeannine McLaughlin (the "Defendant"). The Motion to Dismiss seeks dismissal of the *Complaint* (ECF No. 1) filed by Chapter 7 Trustee Nicole Testa Medhipour (the "Trustee"). The Court took the matter under advisement at the hearing, and for the reasons discussed below, the Court now grants the Defendant's Motion to Dismiss.

### COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

On May 15, 2013 (the "Petition Date"), Marshall Chesrown (the "Debtor") filed a voluntary petition for chapter 7 bankruptcy relief. Thereafter, the Trustee was appointed as the Debtor's chapter 7 trustee. On May 14, 2015, the Trustee initiated the above-captioned adversary proceeding. In her Complaint, the Trustee makes the following allegations:

Prior to the Petition Date, the Debtor was involved in numerous enterprises within the automotive dealership and real estate development industries. Compl. at ¶ 10. Before the collapse of the real estate market, the Debtor personally invested tens of millions of dollars to fund real estate ventures and other business projects. *Id.* at ¶¶ 11–12.

From about August 1, 2009, to May 15, 2013, the Defendant—who is the mother of the Debtor—resided in a single family residence owned by the Debtor and located at 201 S. Legend Tree Drive, Liberty Lake, Washington 99019 (the "Lake Property"). Compl. at ¶ 14. From September 2009 through the Petition Date (the "Relevant Time Period"), the Debtor paid at least $ 233,795.35 (the "Mortgage Payments") to Washington Trust Bank (the "Bank") for the mortgage, property taxes, and homeowners insurance on the Lake Property. *Id.* at ¶ 16. The Defendant never paid rent to the Debtor. *Id.* at ¶ 17.

Throughout the Relevant Time Period, the Debtor continually transferred a leasehold interest in the Lake Property to the Defendant without receiving reasonably equivalent value (the "Leasehold Transfer"). Compl. at ¶ 18. The value of the Leasehold Transfer during the Relevant Time Period is an amount not less than the Mortgage Payments paid by the Debtor to the Bank or the market rental value of the Lake Property, whichever is greater. *Id.* at ¶ 19. Alternatively, the Mortgage Payments constitute a transfer of an interest in property or an obligation incurred by the Debtor to the Bank for the benefit of the Defendant (the "Mortgage Payment Transfers," and together with the Leasehold Transfer, the "Transfers"), either of which is recoverable by the Trustee under applicable bankruptcy and state law. *Id.* at ¶ 20.

Based upon the foregoing allegations, the Trustee asserts seven causes of action against the Defendant:

(I) avoidance and recovery of fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B);

(II) avoidance and recovery of fraudulent transfer pursuant to 11 U.S.C. § 544 and Florida Statutes § 726.105(1)(b);

(III) avoidance and recovery of fraudulent transfer pursuant to 11 U.S.C. § 544 and Florida Statutes § 726.106(1);

(IV) avoidance and recovery of fraudulent transfer pursuant to 11 U.S.C. § 544 and Idaho Code § 55–913(1)(b);

(V) avoidance and recovery of fraudulent transfer pursuant to 11 U.S.C. § 544 and § 24.005(a)(2) of the Texas Business & Commercial Code;

(VI) avoidance and recovery of fraudulent transfer pursuant to 11 U.S.C. § 544 and Washington Statutes RCW § 19.40.041(a)(2); and

(VII) recovery of property pursuant to 11 U.S.C. § 550.

Compl. at 5–17. The Defendant responded to the Trustee's Complaint by filing the Motion to Dismiss now before the Court.

### CONCLUSIONS OF LAW

**I.  Motion to dismiss standard**

In order to state a claim for relief under Federal Rule of Civil Procedure 8(a)[1] and thus survive a Rule 12(b)(6) motion to dismiss,[2] the factual allegations of the Trustee's Complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft. v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In determining facial plausibility, a court should not assume the veracity of mere legal conclusions or threadbare recitals of the elements of a cause of action. *Id.* at 679, 129

S.Ct. 1937, 173 L.Ed.2d 868. However, when "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664, 129 S.Ct. 1937. If a plaintiff's allegations do "not nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929.

**II.  *The Trustee fails to state a claim upon which relief can be granted***

All seven of the Trustee's claims seek to avoid and recover the Transfers as constructively fraudulent. Count I seeks to avoid and recover the Transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code. In order to state a claim pursuant to § 548(a)(1)(B), the Trustee must establish that within two years of the Petition Date:

(1) the Debtor had an interest in property;

(2) the Debtor transferred that property;

(3) the Debtor received less than reasonably equivalent value in exchange for the property; and

(4) on the date of the transfer of the property:

(i) the Debtor was insolvent,

(ii) the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital, or

---

**1.** The Defendant asserts that Federal Rule of Civil Procedure 9(b) applies to the Trustee's claims as the Trustee's claims are based on fraud. The Court, however, has previously held that Rule 9(b)'s heightened pleading standard does not apply to constructive fraudulent transfer claims. *See, e.g. Mukamal v. Cosmos, Inc. (In re Palm Beach Fin. Partners),* 11–02970–BKC–PGH–A, at 4–5 (Bankr. S.D. Fla. July 30, 2013).

**2.** Rule 8(a) and Rule 12(b)(6) are made applicable to bankruptcy proceedings by Rule 7008 and Rule 7012, respectively, of the Federal Rules of Bankruptcy Procedure.

(iii) the Debtor intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(B). Counts II through VI also seek to avoid and recover the Transfers as constructively fraudulent; these counts, however, seek relief pursuant to 11 U.S.C. § 544's strong arm provision and four different states' fraudulent transfer laws. The only significant difference between the states' fraudulent transfer laws and § 548(a)(1)(B) is that the statute of limitations under each states' fraudulent transfer laws is four years, rather than the two years specified in § 548.

Based upon these common elements of constructive fraudulent transfer claims, the Defendant asserts three primary reasons why the Trustee's Complaint fails to state a claim upon which relief can be granted:

(1) The Complaint fails to allege that the Transfers diminished the Debtor's bankruptcy estate;

(2) The Complaint exceeds the statutory authority of the Trustee; and

(3) The Complaint fails to establish the existence and transfer of a leasehold interest.

The Court agrees with the Defendant that the Complaint should be dismissed and will address all three arguments together as they are interrelated.

■ The rationale behind allowing for the avoidance and recovery of fraudulent transfers in the bankruptcy context and otherwise is to recover and preserve assets of the estate, or of the debtor, for proper distribution to creditors. *See, e.g., Grayson Consulting, Inc. v, Wachovia Securities, LLC (In re Derivium Capital, LLC),* 716 F.3d 355, 361 (4th Cir.2013) (holding that "[t]he purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors"); *Ivey v. First–Citizens Bank and Trust Co. (In re Whitley),* No. 10–10426, 2014 WL 6910837, at *1 (Bankr. M.D.N.C. Dec. 8, 2014) (holding that the transfers at issue "were not fraudulent transfers because . . . they did not diminish the Debtor's estate"); *Calvert v. Prevost Car (US) Inc. (In re Consol. Meridian Funds),* No. 10–17952, 2014 WL 1329238, at *3 (Bankr.W.D.Wash. Mar. 28, 2014) (noting that "the purpose of the fraudulent transfer statutes is to return lost value to the debtor's diminished estate and redistribute that value for the benefit of all creditors"); *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.),* 325 B.R. 81, 87 (Bankr.S.D.N.Y.) *adhered to on reconsideration,* 325 B.R. 134 (Bankr. S.D.N.Y.2005) (stating that "[f]raudulent transfer law permits the recovery of transfers that unfairly diminish a debtor's estate").

■ Here, the Transfers did not diminish the Debtor's estate. The Trustee first argues that the Defendant is liable for Mortgage Payment Transfers that the Debtor made to the Bank because the Defendant received, either directly or indirectly, the benefit of these transfers. However, the Mortgage Payment Transfers reduced a secured debt—the mortgage owed on the Lake Property. The Debtor owed the mortgage to the Bank, in the same amount and with the same payment schedule, whether or not the Defendant was living in the Lake Property. The benefit received by the Defendant on account of the Mortgage Payment Transfers is merely incidental. The Mortgage Payment Transfers reduced the mortgage such that the Bank's claim in the Debtor's bankruptcy estate is significantly less than it would have been had the Debtor not made the Mortgage Payments. *See Meis-*

ter v. Jamison (In re Jamison), ·21 ·B.R. 380, 381 (Bankr.D.Conn.1982) (holding·that "[e]ven though a transfer of property, e.g. money, incidentally benefits another, it cannot be said as a matter of law or logic that the· .transaction was a fraudulent transfer as to the party benefited").

Moreover,· allowing the Trustee to recover the Mortgage Payment Transfers from the Defendant would result in the following double recovery for · the unsecured creditors:

> (1) The ·prepetition Mortgage· Payment Transfers reduced the Debtor's debt to the Bank, · thus· reducing the Debtor's overall indebtedness and reducing the Debtor's unsecured debt, to the extent the Bank's mortgage was undersecured, and elevating the relative position of and 'potential payout to unsecured creditors; and
>
> (2) A monetary judgment ·against the Defendant, in an amount at least equal to the amount of the Mortgage Payment Transfers, from which all unsecured creditors would benefit.

A double recovery such as this would be inequitable. See In re Jamison, 21 B.R. at 382 (noting that if the defendant, in a scenario nearly identical to the case at bar, had to pay the trustee an amount equivalent to the total of the monthly payments the debtor made to the credit union, "the estate would not only have the benefit of those funds but the reduction in the debtor's obligation to the credit union as well, which would hardly be an equitable result").

■ Thè Trustee also· alleges that throughout the Relevant Time Period, the

Debtor continually transferred a leasehold interest in the Lake Property to the Defendant without receiving reasonably equivalent value. Accordingly, the Trustee seeks to recover from the Defendant an amount not less than the Mortgage Payments paid by the Debtor to the Bank or the fair market rental value of the Lake Property, whichever is greater. Assuming that the Debtor did indeed transfer a leasehold interest to the Defendant,[3] once again, the Leasehold Transfer did not diminish, the Debtor's bankruptcy estate. The fact that the Defendant benefitted from living in the Debtor's house. rent-free is· irrelevant because her· benefit did not come at the expense of the Debtor's estate since the Debtor would not have received rent if the Lake Property was not occupied instead of occupied by the Defendant. See Cox v. Grube (In re Grube), No. 09–81713, 2012 WL 3263905, at *7 (Bankr.C.D.Ill. Aug. 9, 2012) (stating that "[w]here there is no depletion of a debtor's estate because a payment is matched by an equivalent reduction in debt, any corresponding benefit to third parties does not come at the expense of the estate, and those parties cannot be said to have received a fraudulent transfer").

■ Finally, prior to filing for bankruptcy, the Debtor had the right to do whatever he wanted to do with the Lake Property, and the Trustee cannot now retroactively question his choices. To do so would exceed the statutory authority granted to bankruptcy trustees. Geltzer v. Xaverian High Sch. (In re Akanmu), 502 B.R. 124, 132–33 (Bankr.E.D.N.Y.2013) (holding that ·"[a] trustee· is not granted

---

**3.** The Defendant asserts that the Trustee fails to establish a leasehold· interest or that the Debtor ever transferred the alleged leasehold · interest to the Defendant. However,· because the Court determines that the Transfers did not diminish the Debtor's estate and that the

Trustee has no statutory authority to avoid the Transfers, the Court need not determine whether a leasehold interest existed and if it did, whether·the Debtor actually transferred· it to the Defendant.

veto power over a debtor's personal decisions, at least with respect to pre-petition expenditures"). The Debtor graciously chose to let his mother, the Defendant, live in the Lake Property rent free. However, had he let the Lake Property sit vacant rather than let the Defendant live in it, the Trustee would have absolutely no recourse. Had the Debtor let the Lake Property sit vacant, the Trustee would simply have viewed the Mortgage Payment Transfers for what they are—routine mortgage payments—and would have been unable to recover the value of these payments or the fair market rental value of the Lake Property from anyone.

The Debtor allowing his mother, the Defendant, to live in the Lake Property rent-free prepetition is no different from a debtor allowing his child to use his car rent-free prepetition [4] or a debtor allowing his friend to use his Miami Heat season tickets for free prepetition. Of course, like the Debtor here, the debtors in these hypotheticals could have made money prepetition off of these assets. However, their reasons for not doing so are their own. A bankruptcy trustee does not have the authority to look back and examine all of a debtor's prepetition decisions in an attempt to find instances in which the Debtor could have increased his assets but failed to do so.[5]

Accordingly, the Court grants the Defendant's Motion to Dismiss because (1) the Complaint fails to allege that the Transfers depleted the Debtor's bankruptcy estate, (2) it would be inequitable to allow Trustee to recover the value of the Transfers from the Defendant as it would result in a double recovery to the creditors, and (3) the Trustee's attempt to avoid and recover the Transfers exceeds the Trustee's statutory authority,

### *ORDER*

With the Court being fully advised in the premises and for the reasons discussed above, the Court hereby **ORDERS AND ADJUDGES** that the Defendant's Motion to Dismiss is **GRANTED WITH PREJUDICE.**

**ORDERED in the Southern District of Florida on July 28, 2015.**

---

4. This particular scenario is the subject of *Meister v. Jamison (In re Jamison)*, 21 B.R. 380, 381 (Bankr.D.Conn.1982). The Court in *Jamison* held, as the Court holds here, that the son was not liable for the car payments made by the debtor, his father, to the credit union.

5. The same holds true for instances in which a debtor, prepetition, depletes his assets under circumstances in which a trustee believes the decision was unwise, such as when a debtor buys dinner for his friends or purchases an expensive prom dress for his daughter. In these scenarios, a trustee likely has no authority to judge all of the debtor's prepetition decisions and thus likely has no remedy. However, such a scenario is not now before the Court. *See, e.g. Montoya v. Campos (In re Tarin)*, 454 B.R. 179 (Bankr. D.N.M.2011) (holding that debtor's daughter was not liable under fraudulent transfer law for the amount her parents paid for her wedding prepetition).